# PD-1385_1388-15

PD-1385_PD-1388-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/23/2015 2:22:29 PM
Accepted 10/27/2015 3:56:01 PM
ABEL ACOSTA
CLERK

**CAUSE NUMBER** _____

---

### IN THE COURT OF CRIMINAL APPEALS
### FOR THE STATE OF TEXAS

---

### WILLIAM JAMES AKIN
### PETITIONER

### v.

### THE STATE OF TEXAS

---

### PETITION FOR DISCRETIONARY REVIEW

IN TRIAL COURT CAUSE NUMBERS:  CR-13-24791; CR-13-24795;

CR-13-24796; CR-13 24979 FROM THE 336TH JUDICIAL DISTRICT COURT OF

FANNIN COUNTY, TEXAS

AND FROM THE

THE COURT OF APPEALS FOR THE SIXTH

COURT OF APPEALS IN TEXARAKANA, TEXAS

CASE NUMBERS:  06-14-00178-CR; 06-14-00179-CR; 06-14-00180-

CR; 06-14-00181-CR

FILED IN
COURT OF CRIMINAL APPEALS

October 27, 2015

ABEL ACOSTA, CLERK

**STEVEN R. MIEARS**

State Bar of Texas No.: 14025600
211 North Main
Bonham, Texas 75418
Tel: 903-640-4963
Fax: 903-640-4964
Email: SteveMiears@msn.com

ORAL ARGUMENT IS REQUESTED

## Identity of Parties and Counsel

Under Rule 68.4(a), Rules of Appellate Procedure, the following is a complete list of the names and addresses of all parties to the trial court's final judgments and their counsel in the trial court, and appellate counsel, so the members of the court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the cases and so the Clerk of the Court may properly notify the parties to the trial court's final judgments or their counsel of the judgments and all orders of the Court of Criminal Appeals.

**Trial Judge: THE HONORABLE JUDGE LAURINE BLAKE, 336TH JUDICIAL DISTRICT COURT**

**Appellant ..................................... WILLIAM JAMES AKIN**

> **TDC# 01955082**
> **11950 FM 998**
> **Dalhart, TX 79022**

**Steven R. Miears (Counsel on Appeal)**
SBOT# 14025600
211 North Main
POB 736
Bonham, Texas 75418
903 640 4963 fax: 903 640 4964
SteveMiears@msn.com

Donald Hoover (Counsel at Trial)
SBOT #24053049
101 East Sam Rayburn Drive
Bonham, Texas 75418

**THE STATE OF TEXAS**          **Richard E. Glaser**
SBOT# 08000000
Criminal District Attorney
101 East Sam Rayburn Drive
Bonham, Texas 75418

# TABLE OF CONTENTS

IDENTIFICATION OF PARTIES AND COUNSEL.....................................................2

TABLE OF CONTENTS ....................................................................... ...... 4

INDEX OF AUTHORITIES........................................................................ 5

STATEMENT REGARDING ORAL ARGUMENT.....................................................7

STATEMENT OF THE CASE....................................................................7

STATEMENT OF PROCEDURAL HISTORY................................................................7

GROUNDS FOR REVIEW.. ....................................................................... .8

1. The Sixth Court of Appeals failed to apply the correct standard of review on appeal to measure harm caused by the admission of irrelevant evidence.

2. Should the analysis for harm from the admission of *irrelevant* evidence be similar as that used under Rule 403 and <u>Montgomery</u> to ascertain harm from the admission of <u>relevant</u> evidence?

ARGUMENT....................................................................................8

PRAYER FOR RELIEF................................................................17

APPENDIX (Copies of Opinions from Court of Appeals)

CERTIFICATE OF SERVICE.......... ..............................................................18

CERTIFICATE OF WORD COUNT........................................................... 20

# INDEX OF AUTHORITIES

**Constitutions**

14th amendment to the U.S. Constitution.

**Rules**

Tex. R. App. P. 44.2(b). p.9

Tex. R. App. P. 47. p.10

**Cases**

*Akin v. State of Texas,* No. 06-14-00178-CR (Tex. App. Texarkana – 2015). p.9

*Anderson v. State,* 717 S.W.2d 622, 628 (Tex. Crim. App. 1986). pp. 10,11

*Erazo v. State,* 144 S.W.3d 487, 2004 Tex. Crim. App. LEXIS 1007 (Tex. Crim. App. 2004). p.17

*Ex parte Weinstein,* 421 S.W.3d 656, 665 (Tex. Crim. App. 2014). p.14

*Kotteakos v. United States,* 328 U.S. 750, 776, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946). pp. 13,14

*Leday v. State,* 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). p.11

*Montgomery v. State,* 810 S.W.2d 372 (Tex. Crim. App. 1991) (op. on reh'g). pp.8,15,16

*Morales v. State,* 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). pp. 9,11,15

*Murphy v. State,* 12-07-00368-CR, 2009 WL 2450990, at *2 (Tex. App.—Tyler Aug. 12, 2009, pet. ref'd) (mem. op., not designated for publication). pp. 9, 10

*O'Neal v. McAninch,* 513 U.S. 432, 435, 115 S. Ct. 992, 994, 130 L. Ed. 2d 947 (1995). p.14

*Russell v. State,* 113 S.W.3d 530, 549-550 (Tex. App. Fort Worth 2003). p.15

*Thrift v. State,* 134 S.W.3d 475 (Tex. App. Waco 2004). p.15

*Thrift v. State*, 176 S.W.3d 221 (Tex. Crim. App. 2005). p.15

*Warr v. State,* 418 S.W.3d 617, 2009 Tex. App. LEXIS 2538 (Tex. App. Texarkana 2009). p.10

*Webb v. State,* 36 S.W.3d 164, 182-83 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd) (op. on reh'g). p.14


**Secondary Sources**

Janet L. Hoffman, <u>Litigation Journal</u> SPRING 2011 • Vol. 30 No. 1. p.12

W. Mark Lanier, TECHNOLOGY: PICTURE THIS: PRACTICAL POWERPOINT TIPS FOR LAWYERS, 69 <u>Tex. B. J.</u> 610, 2006. p.12

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested.

## STATEMENT OF THE CASE

This petition relates to four cases joined for trial and appeal. Petitioner was convicted by a jury of sexual assault of a child and three counts of indecency with a child by sexual contact. He was sentenced to twenty years imprisonment. There are four opinions from the Court of Appeals. The memorandum opinion in the sexual assault case, 06-14-00178-CR, discusses the issue common to all cases which is the subject of this Petition. This Petition relates to all cases as the issue is the same. Appellant has filed a motion with the Sixth Court of Appeals requesting that the opinion be changed and designated as published. The Court has not ruled on that motion.

## STATEMENT OF PROCEDURAL HISTORY

The opinions of the Court of Appeals were handed down on September 16, 2015. Appellant's motion for rehearing was overruled on October 6, 2015.

## GROUNDS FOR REVIEW

1. The Sixth Court of Appeals failed to apply the correct standard of review on appeal to measure harm caused by the admission of irrelevant evidence.

2. Should the analysis for harm from the admission of *irrelevant* evidence be similar as that used under Rule 403 and <u>Montgomery</u> to ascertain harm from the admission of *relevant* evidence?

## Summary of the Petition

The Sixth Court of Appeals failed to apply the correct standard of review on appeal to measure the harm caused to the Appellant by the admission of graphic photos held to be irrelevant evidence. Specifically, the Court fails to apply precedent from the U.S. Supreme Court and this Court to ascertain harm from the admission of irrelevant evidence. In failing to review the potential for harm from irrelevant evidence by the <u>Montgomery</u> factors, the Court lowers the threshold for a harm analysis to below that for review for harm from relevant evidence. The Court of Appeals errs in finding there was no harm to Appellant from the exhibits.

## ARGUMENT

The Court of Appeals correctly concludes that the trial court erred in admitting into evidence several pornographic images found on a computer. These exhibits are attached to this electronically filed PDR as "attachments." As the opinion states, "Since

the record does not show a nexus between Akin's use of adult pornography and either the victim or the nature of the offense, we find that the exhibits were not relevant evidence tending to show Akin's intent to arouse or gratify his sexual desire by sexually assaulting or sexually contacting children. Admitting State's Exhibits 8, 9, 10, and 11, over Akin's objections, was error." Akin v. State of Texas, No. 06-14-00178-CR (Tex. App. Texarkana – 2015) p. 13. As non-constitutional error the Court reviewed this error for harm under Tex. R. App. P. 44.2(b). Unless the error affects a substantial right of the defendant, it must be disregarded.

To determine whether a substantial right was affected the Court cited Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000), and employed the following standard: "We should not overturn the conviction for non-constitutional error if, after examining the whole record, we have 'fair assurance that the error did not influence the jury, or had but a slight effect." Akin, id., at 14. An evidentiary doctrine heavily relied upon by the Court in its analysis of the record for harm was that: "Improper admission of evidence is not reversible error if other unchallenged evidence proves the same facts." Akin, id., at 14.To support this as a statement of law the Court cites as follows: "Murphy v. State, 12-07-00368-CR, 2009 WL 2450990, at *2 (Tex. App.—Tyler Aug. 12, 2009, pet. ref'd) (mem. op., not designated for publication); Warr, 418 S.W.3d at

621 (citing Anderson v. State, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986)).” The complete cite is Warr v. State, 418 S.W.3d 617, 2009 Tex. App. LEXIS 2538 (Tex. App. Texarkana 2009). Akin, *id.,* at 14. The Court then finds the error from the admission of the photographic images harmless because, “Essentially the same facts were shown by the testimony of Akin’s ex-wife, Misti. She testified that, in the last years of their marriage, Akin was watching aggressive and vulgar pornography, including wife-raping video recordings, forced sex, and simulated rape.” Akin, *id.* at 14. The Court reasons that since testimony from witnesses described Appellant’s use of pornography then the admission of actual pornographic images was not influential. In its methodology and conclusion the Court errs.

The Court’s reliance upon Murphy is questionable. Murphy was a non-published memorandum opinion. In criminal cases, under Tex. R. App. P. Rule 47, “Opinions and memorandum opinions not designated for publication by the court of appeals under these or prior rules have no precedential value.” Murphy differs because it concerned the admission of irrelevant hearsay testimony, not visual images. The Court’s reliance upon Warr is interesting. In Warr, the Court held that the erroneous admission into evidence of actual sex toys into evidence *was*

harmful to the Appellant when unobjected to testimony had described the same evidence.

But for the general proposition that "Inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove," the Court cites Anderson v. State, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986). This evidentiary doctrine relied upon by the Court may also be known at times as curative admissibility, and commonly expressed as "opening the door." (For a discussion of the confusing use of terms *see* Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (explaining rule of harmless error, waiver, and common-law doctrine of curative admissibility). Under some version of that doctrine, not involving rebuttal, the Appellant was held to have waived his right to complain on appeal of harm by not challenging similar evidence offered by the State. By not objecting to testimony which described what was depicted in the exhibits the Appellant is held to have waived his complaint about their unfairness.

In finding no harm the Court used the Morales standard for measuring harm of whether there is a "fair assurance that the error did not influence the jury, or had but a slight effect." The Court of Appeals errs in finding these images had little or no

influence on the jury's verdict. The Court underestimated the power of these visual images to upset the stability of the orderly consideration of relevant evidence.

Modern trial advocacy teaches lawyers to use photographs to embed a point within a juror's mind – indelibly, so they recall it during deliberations. They are taught that the brain retains information differently according to its type, especially a narrative coupled with graphic exhibits. The advice to "use a picture because it's worth a thousand words" is the law school mantra for how to triumph at trial.

Studies of the brain, and research on learning, show that people retain information best when all their senses are engaged. The brain is most active when stimulated in various ways. Jurors are persuaded when a case is presented in a multimedia format. Joining graphics with a narrative enhances the impact. *See* Janet L. Hoffman, Litigation Journal SPRING 2011 • Vol. 30 No. 1. Lawyers have been so instructed to use visuals in trial to where they are expected by jurors. Who goes to trial without a PowerPoint anymore? The days of trying a case with a legal pad and an indictment are gone. Court rooms across the State have been modified to accommodate video monitors and projection devices. As attorney Mark Lanier wrote ten years ago, "Pictures are attention-getters and attention-keepers. Jurors' brains and emotions react to pictures and a lawyer's words subconsciously." W. Mark Lanier, TECHNOLOGY:

PICTURE THIS: PRACTICAL POWERPOINT TIPS FOR LAWYERS, 69 Tex. B. J. 610, 2006.

The Court of Appeals failed to acknowledge the power these photos had to destabilize the integrity of the trial process. The coupling of these images of gang sodomy with the testimony that, "Akin was watching aggressive and vulgar pornography, including wife-raping video recordings, forced sex, and simulated rape . . ." caused impression associated with Appellant to be frozen in their minds. How this impression affected their decision making is the question.

The Court of Appeals acknowledged that none of these pictures had any relevance to the conduct Appellant was accused of committing. But the Court concluded that the images had little or no impact because the jurors had heard testimony from witnesses that described the subject of the photos. Instead of recognizing the danger of unfair prejudice presented from visual images, the Court's opinion minimizes their impact precisely *because* they were joined with narrative testimony. *Akin v. State,* No. 06-14-00178-CR, p. 14. In truth, the harm was a consequence of the photos being joined with a storyline.

Nor does the Court's opinion acknowledge that Texas law employs the Kotteakos standard to review non-constitutional error for harm set forth by the U.S.

Supreme Court. *See Ex parte Weinstein,* 421 S.W.3d 656, 665 (Tex. Crim. App. 2014). In <u>Kotteakos v. United States,</u> 328 U.S. 750, 776, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946) the U.S. Supreme Court explained: "If one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." <u>Kotteakos,</u> 328 U.S. at 765, 66 S. Ct. at 1248.

"Grave doubts" means the matter is so evenly balanced that one feels in virtual equipoise as to the harmlessness of the error. <u>Webb v. State,</u> 36 S.W.3d 164, 182-83 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd) (op. on reh'g) (citing <u>O'Neal v. McAninch,</u> 513 U.S. 432, 435, 115 S. Ct. 992, 994, 130 L. Ed. 2d 947 (1995)). If the reviewing court is unsure whether the error affected the outcome, the court should treat the error as harmful, and as having a substantial and injurious effect or influence in determining the jury's verdict.

The issue is whether there is uncertainty whether these photographs may have influenced the jury's verdict. By admitting the photographs, the jury was sent the

message they were important in determining Appellant's guilt or innocence. The integrity of the process leading to the conviction should be paramount. The trial court's error in sanctioning these images was of a magnitude it disrupted the orderly evaluation of the evidence. It is the effect of this error, not any of the other evidence, which should have dictated the appellate judgment. *See* Russell v. State, 113 S.W.3d 530, 549-550 (Tex. App. Fort Worth 2003).

This case is factually akin to opinion at the Court of Appeals in Thrift v. State, 134 S.W.3d 475 (Tex. App. Waco 2004). Subsequently, in Thrift v. State, 176 S.W.3d 221 (Tex. Crim. App. 2005) this Court affirmed Thrift's conviction but on other grounds. In the original Thrift opinion, the Court of Appeals appropriately concluded on similar facts that "we do not know that it was the credibility-weighing of the witnesses that led to the verdict, rather than that the photographs 'tipped the scales' in a close case." The result here should be the same. This was a case of "he said – she said." No eyewitnesses. No forensic evidence. No confession. But there were horrible, irrelevant photos that the jury should never have seen. These images, magnified by testimony, could "tip the scales" against the Appellant.

The Morales standard lacks guidance to Appellate courts to assess harm from introducing irrelevant evidence. When relevant evidence is admitted under Rule 403

this Court has established that the <u>Montgomery</u> factors (probative value, irrational impression, time to develop, and need for the evidence) apply to the review for harm. *See* <u>Montgomery v. State,</u> 810 S.W.2d 372 (Tex. Crim. App. 1991) (op. on reh'g). Rule 403 applies to judge whether otherwise relevant evidence should be excluded because its use would be unfair. Here, the pictures were rightly found to be irrelevant, and of zero probative value. There was no legal basis for their admissibility. Surely the analysis for harm from the admission of irrelevant evidence should have an objective threshold analysis for harm equal to that of relevant evidence.

The application of the <u>Montgomery</u> factors to these images would cause a finding of harm. A consideration of the potential of these photographs "to impress the jury in some irrational, yet indelible, way" is especially appropriate. The Court of Appeals does not address this as a concern because this Court has not directed it to do so. This Court should grant review to clarify what factors should be considered for determining harm from the erroneous introduction of irrelevant evidence.

When evidence has no probative value, there is obviously no requirement that its value be "substantially outweighed" by its prejudicial affect at trial or on appeal. *See* Rule 403. Under this balancing test the burden is on the party resisting the evidence to show that using the evidence was unfair. With irrelevant evidence, improperly

admitted, the burden should be on the party who gained by the evidence to convince on appeal that the evidence had no influence. Without the use of objective criteria like the Montgomery factors the review for harm from the irrelevant evidence becomes too subjective for due process as guaranteed by the 14th amendment to the U.S. Constitution.

This Court, however, has not hesitated to correct the erroneous admission of a relevant photograph where its probative value was substantially outweighed by its potential for unfair prejudice. *See* Erazo v. State, 144 S.W.3d 487, 2004 Tex. Crim. App. LEXIS 1007 (Tex. Crim. App. 2004). In failing to recognize the risk of unfairness from these images the Court of Appeals errs. Petitioner asks the Court to look at these photographs. The jury did. While a picture may be worth a thousand words, in this case they were worth a tome.

## PRAYER FOR RELIEF

This Court should grant review. After review, the Court should remand the case back to the trial court for a new trial.

## APPENDIX

Copies of the four opinions of the Court of Appeals are attached.

RESPECTFULLY SUMITTED,

**Steven R. Miears**
211 North Main
Bonham, Texas 75418
stevemiears@msn.com
Tel. 903-640-4963
Fax: 903-640-4964
State Bar Card No. 14025600

Attorney for Appellant

### Certificate of Service

This is to certify that a true and correct copy of the above and foregoing Appellant's Brief on Appeal was hand-delivered to Richard E. Glaser, Fannin County Criminal District Attorney; 101 East Sam Rayburn Drive; Bonham, Texas 75418; on October 23, 2015; and to the State Prosecuting Attorney, LISA C. McMINN, P.O. Box 13046, Capitol Station, Austin, Texas 78711, and that a copy was mailed to the Appellant, William James Akin.

Steven R. Miears

## CERTIFICATE OF WORD COUNT

Counsel for the Appellant certifies that the word count of this brief is less than 3,213 words and within the limitations for length of PETITIONS FOR DISCRETIONARY REVIEW.

_____

Steven R. Miears



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00178-CR

_____

WILLIAM JAMES AKIN, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-13-24791

_____

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

In June 2013, toward the end of her family reunion at Bonham State Park, Grace[1] became concerned that her forty-year-old brother, William James Akin, might have acted inappropriately toward fourteen-year-old Katie, one of the two teenaged daughters of Grace's fiancé, Mark. It had just been reported to Grace by Katie's sixteen-year-old sister, Martha, that Akin had earlier suggestively complimented, and lingered as he thoroughly eyed, the bikini-clad Martha outside nearby restroom facilities. Still earlier that day, the bikini-clad Katie had spent some extended time in close contact with Akin in the lake, as the rest of the reunion group was playing in the water not far away. Exactly what that contact had consisted of had been screened by the water and the distance from the main group of swimmers to Katie and Akin.

Though Katie initially denied any Akin misdeeds, she soon admitted to Grace that Akin had touched her sexually. That ultimately led to Akin's conviction on multiple charges. In the case appealed here,[2] Akin was convicted of sexual assault of a child[3] and sentenced to twenty years' imprisonment.

---

[1]Grace, along with everyone else in either family group, except the defendant, William James Akin, is given a pseudonym in this opinion to protect the minors' involved. *See* TEX. R. APP. P. 9.8(b)(2), 9.10(a)(3). Those so named include Mark; Mark's daughters; Martha and Katie; Mark's fiancée, Grace; Akin's mother, Molly; Akin's cousin, Melinda; and the wife of another Akin cousin, Fiona.

[2]In cases arising from the same incident, Akin was also convicted of three counts of indecency with a child by sexual contact, convictions that have also been appealed to this Court and addressed in opinions released the same date as this opinion, in our case numbers, 06-14-00179-CR, 06-14-00180-CR, and 06-14-00181-CR.

[3]*See* TEX. PENAL CODE ANN. § 22.011(a)(2) (West 2011).

In a consolidated brief addressing all four cases, Akin contends that the trial court erred in admitting four photographs depicting pornography-related screenshots from his laptop and in granting the State's challenge of a juror for cause. We find that (1) no harm came from the error in admitting the photographs regarding Akin's use of pornography and (2) the trial court was within its discretion in dismissing a juror for cause at the State's request. Therefore, we affirm the judgment of the trial court.

*(1)*      *No Harm Came from the Error in Admitting the Photographs Regarding Akin's Use of Pornography*

Akin claims harmful error in the admission of four photographs of screen displays on his laptop computer, two of those describing various pornographic sites appearing in internet search histories and two displaying pornographic websites that had been actively running when his computer was seized. Although the admission of these photographs was error, the error was harmless.

Before we address the admission of these four photographs, we review the context of the offense and trial.

At the consolidated trial, Katie gave detailed testimony about the incident in question. At three feet, ten inches tall, Katie is unusually short for her age.[4] On Saturday, the family reunion revelers spent most of the day in the lake. Since most of the activity took place in water that was around five feet deep, Katie rode on other people's backs. Akin was the last person to carry her on his back.

---

[4]Katie suffers from pseudoachondroplasia, a genetic bone growth disorder.

3

While Katie rode on Akin's back, her feet fell asleep. Akin began rubbing them, but then worked his way up Katie's legs. Even though she told him, "[T]his is really weird," he continued to rub her thighs, her butt, and then under her swimsuit, and then put his finger in her vagina. Katie testified she was scared and wanted to cry out to the others that were in the water, but she froze. Akin moved his fingers up and down for a few minutes, then moved her to his side. She said he then put his hand underneath the top of her swimsuit and grabbed her breast. After that, he removed his hand and again put his hand inside the bottom of her swimsuit and put his finger back into her vagina. She testified that he then pulled his swimsuit down, took out his penis, and grabbed her leg to make her leg and foot rub against it. Then he grabbed her hand and made her hand rub his penis. Katie testified that this did not last long before Akin said, "We're going to get caught. We need to stop." He then pulled up his swimsuit, put her on his back and again put his finger in her vagina. He asked her if she wanted to go to the bathroom to "finish this," but she did not respond. Akin told her that she could not say anything about what had happened and said, "I don't want to go to jail for 20 years over this." She said Akin finally stopped when his mother, Molly, got in the water and walked toward them to take a picture.

Melinda, one of Akin's cousins, also testified for the State. She testified that she had seen Katie on Akin's back in the lake at the reunion. At the time, they were on one side of a large float, off by themselves, while the rest of the people were on the other side. She said that Katie was cheek-to-cheek with Akin and his arms and hands were up high, behind his back. She testified that because of the positioning of his arms and hands, she thought he might be "fingering" her, that is, that his finger was inside her vagina. At the time, she dismissed her suspicion and said

4

nothing, because she gave him the benefit of the doubt and could not believe it could be happening with all the people around. After thinking more about it, she told her sister the next day that she believed Akin had been fingering Katie out in the lake. Fiona, who is married to Akin's cousin, Gary, testified that she had seen Akin holding Katie like a koala bear in the lake and that it made her uncomfortable because they were so close and he was not her father.

Over Akin's objections, his ex-wife,[5] Misti, testified regarding Akin's use of pornography and desire for sex during their marriage.[6] She testified that, during the fourteen years of their marriage, Akin wanted to have sex almost all the time, requesting it multiple times a day.[7] She also testified about Akin's use of pornography. Misti testified that, early in their marriage, Akin watched "normal" pornography, but in the last years of their marriage, he was watching more aggressive pornography. She described these as wife-raping videos, forced sex, and simulated rape. According to Misti, over the last couple of years of their marriage, Akin viewed pornography three to five times a day and would masturbate as he watched it. He viewed pornography on his computer, on DVDs, and in magazines. Misti testified that, although Akin would use emotional manipulation to convince her to have sex with him, he never physically forced her. On cross-

---

[5]Misti was married to Akin at the time of the offense, but divorced him in September 2013.

[6]Although Akin timely objected to Misti's testimony regarding his desire for sex and use of pornography, he does not bring any error in this Court regarding this testimony.

[7]Akin requested, and the trial court gave, a limiting instruction that limited the jury's consideration of testimony regarding Akin's desire for sex only for the purposes of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, and only if it believed the testimony beyond a reasonable doubt. *See* TEX. R. EVID. 404(b). The Texas Rules of Evidence were amended by orders of the Texas Supreme Court and Court of Criminal Appeals, effective April 1, 2015. Those Rules quoted in this opinion are the Rules in effect at the time of the trial of this case. To facilitate access to the text of the Rules in effect at the time of trial, we note that those Rules first appeared in volume sixty of the Texas Bar Journal, beginning on page 1129. *See* 60 Tex. B.J. 1129 (1997).

examination, Misti testified that, the night before the Saturday contact, Katie had jumped onto Akin's lap as they sat around the campfire.

The State also offered the testimony of Eddie L. Wagoner, a licensed professional counselor, licensed clinical social worker, and licensed sex-offender-treatment provider. Wagoner testified that he has worked for almost forty years in the area of sexual offenses against children and has been a registered sex-offender-treatment provider for approximately twenty-five years. He testified regarding the different types of offenders that abuse children: the pedophile, who has a predisposition to be sexually attracted to children, and the "regressed" offenders, who are relatively normal in most aspects of their lives. He explained that regressed offenders develop a diminished thinking capability that allows them to become focused on using a child for sexual gratification. He also explained how pornography distorts a person's thinking by objectifying women and children so that they are looked on as sexual objects, rather than as people. He pointed out, however, that the use of pornography was only one factor in the distortion of thinking. Wagoner explained that the regressed thinking process involves overcoming the accepted social norms of behavior by first entertaining the possibility of engaging in inappropriate behavior, such as sex with a child, then creating an atmosphere in one's mind where it is permissible to engage in the behavior. If a person's thinking has regressed this far, then he may commit a sexual offense when the opportunity arises.

Wagoner agreed that such a person might view a teenage girl at a camp out who sat in his lap as someone who was interested in him sexually and then look for an opportunity. Wagoner

6

also agreed that this type of offender might commit the offense in a spot visible to other people if he could do it with an element of secrecy.

On cross-examination, Wagoner testified that he was testifying only to general characteristics of offenders and not expressing an opinion that an offense had been committed in this case. He also stated that he did not know anything about this particular case. He testified that neither viewing pornography nor having a strong sexual desire necessarily leads to commission of a sexual offense.

The State offered the testimony of Grace, Martha, Mark, Katie's mother, Akin's children and stepson, a clinical counselor, a licensed sex-offender-treatment provider, and the investigating officer. A forensic psychologist, his mother, an aunt, and a cousin testified on Akin's behalf. Akin chose not to testify. Since Akin does not challenge the legal sufficiency of the evidence supporting his conviction, we will not discuss all of the other evidence presented in detail. Rather, we will concentrate on the evidence relevant to the analysis of Akin's challenge concerning the admission of the four photographs.

Sergeant Jacob Barker of the Fannin County Sheriff's Department investigated the charges against Akin. Barker testified that, on the day Akin was arrested but after his arrest, he contacted Akin's then-wife, Misti, and obtained her permission to pick up and search the family's laptop computer. After obtaining the laptop and returning to his office, Barker opened the laptop. Without objection, he testified that, on opening the laptop, he observed that there were two pornographic websites actively playing and that he photographed both of these web pages, thus producing two of the four challenged photographs. Barker then checked the search history on the

7

laptop for the two previous days and photographed the two pages that were displayed, thus producing the other two challenged photographs. He testified that he then scanned the hard drive of the laptop with an ADF triage key, which he explained contains a program designed to scan the computer for child exploitation material. Barker testified, again without objection, that after scanning the laptop for five hours, over 50,000 pornographic images, videos, and websites were found on the computer. He stated that all of the pornographic material recovered from the laptop involved adults and that he was not able to identify any child pornography.

The State offered the two photographs of the search history as State's Exhibits 8 and 9, and the photographs of the two pornographic websites that were actively playing as State's Exhibits 10 and 11. Akin immediately objected under Rules 401, 402, 403, and 404(a) of the Texas Rules of Evidence.[8] He specifically objected that the photographs were not relevant, that they were unfairly prejudicial, and that they violated Rule 404(a). The State responded that they were relevant "to help the State prove the defendant's intent to arouse or gratify the sexual desire and the increase -- the increased nature of his sexual desire, and the -- the force in which he's using -- that he's enjoying, employing the fantasy."

Akin argues that these photographs of pornographic websites and internet search histories are not relevant since there is no evidence that he viewed child pornography or that he used pornography in perpetrating the offense against the child.[9] He also argues that the exhibits should

---

[8]*See* TEX. R. EVID. 401, 402, 403 & 404(a).

[9]Akin also argues that the exhibits were not relevant because there is no evidence that he is the person who viewed the pornographic websites or performed the internet searches indicated on the search histories. However, at trial, Akin only generally objected that they were not relevant, were unfairly prejudicial, and violated Rule 404(a), which forbids the admission of "[e]vidence of a person's character or character trait . . . for the purpose of proving action in

8

have been excluded as inadmissible character evidence under Rule 404(a).  *See* TEX. R. EVID. 404(a).  Finally, Akin argues that, if the exhibits are relevant, they should have been excluded under the balancing test of Rule 403.  *See* TEX. R. EVID. 403.  The State argues that the exhibits were relevant to show Akin's intent to arouse or satisfy his sexual desire.[10]  It argues that the websites and search histories shown in the exhibits were "relevant circumstantial evidence of [Akin's] sexual desire and, by extension, the actions by which he might gratify that sexual desire."

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."  TEX. R. EVID. 401.  While relevant evidence is generally admissible, evidence that "is not relevant is inadmissible."  TEX. R. EVID. 402.  Further, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."  TEX. R. EVID. 403.

---

conformity therewith on a particular occasion."  *See* TEX. R. EVID. 404(a).  On appeal, the point of error "must correspond or comport with the objection made at trial."  *Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd) (citing *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998); *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986)).  If the record does not show a "timely request, objection or motion" that specifically states the grounds for the ruling sought, then the issue is not preserved for appeal.  TEX. R. APP. P. 33.1(a)(1)(A); *see Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009).  If the objection at trial does not correspond with the issue on appeal, nothing is preserved for review.  *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999); *Wright*, 154 S.W.3d at 241.  Since Akin failed to assert these objections at trial, there is nothing preserved for our review.

[10]The Texas Court of Criminal Appeals has recognized that the intent to arouse or gratify sexual desire is an implicit element of aggravated sexual assault of a child.  *Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998).  "Intent to arouse or gratify the sexual desire of any person" is also an explicit element of indecency with a child.  TEX. PENAL CODE ANN. § 21.11(c) (West 2011).  For the purposes of this opinion, we assume, without deciding, that the intent to arouse or gratify sexual desire is an implicit element of sexual assault of a child.

9

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *Saucedo v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004); *Warr v. State*, 418 S.W.3d 617, 619 (Tex. App.—Texarkana 2009, no pet.). As long as the trial court's ruling is within the zone of reasonable disagreement, we will uphold its ruling. *Martin*, 173 S.W.3d at 467; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g); *Warr*, 418 S.W.3d at 619.

While the evidence of pornography use may show the nature of Akin's desires and what actions he might take to fulfill those desires, it does not follow, as argued by the State, that this evidence, standing alone, is relevant to any issue in this case. Generally, for evidence of pornography use by the defendant to be admissible to show a defendant's intent to arouse or satisfy his sexual desire, there must be some evidence showing a nexus between the pornography and either the victim or the nature of the offense committed. *See, e.g.*, *Sarabia v. State*, 227 S.W.3d 320, 324 (Tex. App.—Fort Worth 2007, pet. ref'd) (admitting photographs of pornography depicting activities with preteen boys similar in kind to those perpetrated on child victim). For instance, in cases involving sexual offenses against a child, evidence of the defendant's use of *child* pornography is generally held to be relevant circumstantial evidence of the defendant's intent to arouse or gratify his sexual desire. *See, e.g.*, *Lewis v. State*, 676 S.W.2d 136, 139 ( Tex. Crim. App. 1984) (nude photographs of child victim in indecency case); *Sarabia*, 227 S.W.3d at 324 (photographs depicting activities with pre-teen boys in trial of aggravated sexual assault of child); *Darby v. State*, 922 S.W.2d 614, 620 (Tex. App.—Fort Worth 1996, pet. ref'd) (magazine containing sexually explicit photographs of young female posing with teddy bear corresponded to

10

offense in which defendant had child victim pose with teddy bear); *Barto v. State*, No. 13-13-00384-CR, 2014 WL 895511, at *2, *4 (Tex. App.—Corpus Christi Mar. 6, 2014, pet. ref'd) (mem. op., not designated for publication)[11] (child pornography in continuous sexual abuse of child, defendant had victims watch pornography during commission of offense). In such cases, a nexus existed between the type of pornography used and either the victim or the nature of the offense.

Likewise, some nexus must exist to make evidence of the defendant's use of *adult* pornography relevant in cases involving sexual offenses against children. In *Allen v. State*, our sister Court of Appeals held that a picture of a videotape cover containing adult pornography had some probative value in a trial for sexual offenses against a child when the child victim testified that the defendant "made her watch pornographic movies with him and would make her try to engage in the same sexual acts portrayed in the movie." *Allen v. State*, No. 01-10-00652-CR, 2012 WL 2106550, at *4–5 (Tex. App.—Houston [1st Dist.] June 7, 2012, pet. ref'd) (mem. op., not designated for publication). Notably, this evidence was offered to corroborate the victim's version of the events, not to show the defendant's intent to arouse or gratify his sexual desire. *Id*. at *3.

On the other hand, when the evidence does not show this nexus, evidence of adult pornography has been held irrelevant. In *Cox v. State*, the defendant was convicted of two counts of indecency with a child. *Cox v. State*, Nos. 13-00-184-CR & 13-00-185-CR, 2001 WL 34392825, at *1 (Tex. App.—Corpus Christi Aug. 9, 2001, no pet.). Over the defendant's objection, the trial court admitted a copy of an online sex magazine that contained a small article

---

[11]Although unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

11

related to homosexuality on the internet, but no articles relating to sex with children or unnatural interest in children. *Id.* at *5. The State argued that the magazine was offered to show intent, motive, opportunity, and identity, and pointed to the testimony of the victim that the defendant watched child pornography and masturbated in front of him. *Id*. The Court of Appeals held that this testimony of the victim failed to show how the offered exhibit was relevant to show any of the bases for which it was offered. *Id.*

Other than arguing that the exhibits are relevant to generally show Akin's sexual desires and what actions he might take to satisfy those desires, the State makes no argument, and points to no evidence, that would show how these exhibits, all of which involve adult pornography, are relevant to show Akin's intent to satisfy his sexual desire either by sexually assaulting or sexually contacting a child. The websites and search histories in question all involve pornography involving adults. Barker testified that, of the 50,000 pornographic images, video recordings, and websites found on Akin's computer, all of the material involved adults. Also, although Akin's use of pornography over the past several years involved viewing violent and forced sex, none of it concerned children. In addition, although there was testimony that Akin would masturbate while watching the pornography, this was done in the privacy of his own home, not in front of children. The State offered the testimony of Wagoner in an apparent attempt to establish a nexus between the general use of pornography and sexual offenses against children. However, Wagoner did not testify to any link between the use of pornography involving adults and sexual offenses against children, either generally or in this case in particular. He testified that the effect of using pornography tends to reinforce a regression in the thinking processes that allows a potential

12

offender to entertain the possibility of committing sexual offenses, but he did not express an opinion on whether or not Akin's use of pornography had such an effect on his thinking processes. Further, although Akin's wife testified regarding his sexual desire and use of violent and forced-sex pornography, she testified that he never physically forced her to have sex. Finally, there is nothing in the record to suggest that pornography was used in the commission of the offense.

"Evidence of extraneous sexual activity that simply proves certain propensities toward sexual conduct in general is not admissible." *Warr*, 418 S.W.3d at 621 (citing *Boutwell v. State*, 719 S.W.2d 164, 176–81 (Tex. Crim. App. 1985) (op. on reh'g)). Since the record does not show a nexus between Akin's use of adult pornography and either the victim or the nature of the offense, we find that the exhibits were not relevant evidence tending to show Akin's intent to arouse or gratify his sexual desire by sexually assaulting or sexually contacting children. Admitting State's Exhibits 8, 9, 10, and 11, over Akin's objections, was error.

Admitting evidence in violation of a Rule of Evidence is considered non-constitutional error. *See Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Unless it affects a substantial right of the defendant, non-constitutional error must be disregarded. TEX. R. APP. P. 44.2(b); *Warr*, 418 S.W.3d at 621. We should not overturn the conviction for non-constitutional error if, after examining the whole record, we have "'fair assurance that the error did not influence the jury, or had but a slight effect.'" *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000) (quoting *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).

13

In assessing whether the jury's decision was adversely influenced by the error, we "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Baxter v. State*, 66 S.W.3d 494, 499 (Tex. Crim. App. 2001); *Warr*, 418 S.W.3d at 621. We may also consider the jury instructions, the parties' theories, and closing arguments, if material to the appellant's claim. *Baxter*, 66 S.W.3d at 499; *Warr*, 418 S.W.3d at 621. Whether the State emphasized the erroneous evidence may also be a factor. *Motilla v. State*, 78 S.W.3d 352, 356 (Tex. Crim. App. 2002). Improper admission of evidence is not reversible error if other unchallenged evidence proves the same facts. *Murphy v. State*, 12-07-00368-CR, 2009 WL 2450990, at *2 (Tex. App.—Tyler Aug. 12, 2009, pet. ref'd) (mem. op., not designated for publication); *Warr*, 418 S.W.3d at 621 (citing *Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986)).

The record in this case demonstrates that the error is harmless. First, the exhibits erroneously admitted consisted of two pages reflecting internet search history and photographs of two pornographic websites. Essentially the same facts were shown by the testimony of Akin's ex-wife, Misti. She testified that, in the last years of their marriage, Akin was watching aggressive and vulgar pornography, including wife-raping video recordings, forced sex, and simulated rape. Misti also testified that Akin viewed pornography many times every day. Barker testified that over 50,000 pornographic images, videos, and websites were recovered from Akin's laptop. None of this testimony is challenged on appeal.

14

In addition, Katie gave a clear account of the circumstances surrounding the sexual assault and sexual contact, and two of Akin's cousins confirmed critical parts of Katie's testimony. Testimony from Melinda and Fiona confirmed the close and suspicious behavior of Akin and Katie, consistent with Katie's testimony. Grace confirmed Katie's outcry statement. Thus, there is substantial testimony from both the victim and Akin's family members supporting the conviction.

Further, in its initial final argument, the State mentioned the internet search history only once. On rebuttal, the State, in response to Akin's argument, told the jury that the pornography was introduced only to show Akin's sexual desire and intent. Combined, these references consisted of only two paragraphs out of twelve and one-half pages of the State's argument in the transcript. The majority of its argument focused on Katie's testimony regarding the assault, the confirming testimony of Akin's cousin and sister, and the testimony of Akin's ex-wife.

Considering the unchallenged testimony previously discussed and the evidence supporting the conviction, and after reviewing the entire record, we have a fair assurance that the improperly admitted evidence did not influence the jury, or would have had only a slight influence on the jury. We overrule this point of error.

> *(2)* *The Trial Court Was Within Its Discretion in Dismissing a Juror for Cause at the State's Request*

Akin also claims the trial court reversibly erred in granting the State's for-cause challenge of venireperson Horner. Akin argues that the State failed to establish that Horner could not render a guilty verdict based on the testimony of one witness whom he believed beyond a reasonable doubt and whose testimony proved every element of the alleged offense beyond a reasonable

doubt.[12]  The State argues that Akin failed to preserve any error and also waived any error.

Alternatively, the State argues that the trial court did not abuse its discretion in granting its

challenge for cause.  We agree that the trial court remained within its discretion in sustaining the

challenge to the juror.

       *(a)*     *Error Was Preserved*

       "Preservation of error is a systemic requirement on appeal. If an issue has not been

preserved for appeal[,] . . . [the appellate court] . . . should [not] address the merits of that issue."

*Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) (citations omitted).  Under

Rule 33.1(a) of the Texas Rules of Appellate Procedure, an issue is not preserved on appeal unless

the record shows that it was presented to the trial court "by a timely request, objection or motion"

that "stated the grounds for the ruling that the complaining party sought from the trial court with

sufficient specificity to make the trial court aware of the complaint, unless the specific grounds

were apparent from the context."  TEX. R. APP. P. 33.1(a)(1)(A); *Clark v. State*, 365 S.W.3d 333,

339 (Tex. Crim. App. 2012); *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009).

Under this Rule, "a party need not state his objection with specificity in order to preserve error so

long as the record otherwise makes it clear that both the trial court and the opposing party

understood the legal basis." *Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013).  Also,

---

[12]Akin also argues that the trial court's error in sustaining the State's challenge for cause violated his right to a fair and impartial jury and to due process.  *See* U.S. CONST. amend. VI, XIV; TEX. CONST. art. I, § 10.  As such, he urges us to apply a constitutional harm analysis, which he candidly acknowledges is contrary to established precedent of the Texas Court of Criminal Appeals.  *See Jones v. State*, 982 S.W.2d 386, 391 (Tex. Crim. App. 1998) (erroneous granting of State's challenge for cause does not, except in few limited instances, violate defendant's rights to due process and to impartial jury guaranteed by Sixth and Fourteenth Amendments to United States Constitution and by Article I, Section 10 of Texas Constitution).  Since we find that the trial court did not abuse its discretion in granting the challenge for cause, we need not address this argument.

an issue on appeal that does not comport with the objection made at trial presents nothing for appellate review. *Ibarra*, 11 S.W.3d at 197; *Wright*, 154 S.W.3d at 241.

The State contends that Akin's objection to the challenge for cause was not sufficiently specific to inform the trial court and the State of the basis of his objection and why he thought he was entitled to the requested ruling. To the contrary, the basis of Akin's objection to the State's challenge was apparent from the context. Since the State's voir dire of Horner is relevant to all facets of this point of error, we will set forth the relevant portions.

After explaining to the veniremembers its burden of proof and its entitlement to a conviction on proof of the defendant's guilt beyond a reasonable doubt with only one witness, the State asked:

> . . . . So I'm going to ask each and every one of you, would you refuse to convict on the testimony of only one witness even if that witness convinces you of the defendant's guilt beyond a reasonable doubt? Okay. So, the question's not could one witness ever get you to beyond a reasonable doubt. The question is, if one witness got you to beyond a reasonable doubt, would you refuse to convict? What do you think, Mr. Horner, would you refuse or would you convict?

> VENIREPERSON [Horner]: Depending on what the total facts are in the case.

> [The State]: Okay . . . in the question, the total facts are that that one witness convinced you of the defendant's guilt. So, if that one witness convinced you of the defendant's guilt, would you nevertheless still refuse to convict merely because the State put only one witness on the stand?

> [Horner]: It would be hard.

> [The State]: It would be hard. Okay.

> . . . .

17

[The State]:  . . . . So, the State puts on its one witness and that one witness convinces you that the defendant is guilty beyond a reasonable doubt. Okay? So, the State's met its burden. Right?

[Horner]:  Okay.

[The State]:  So, the question is, if the State meets its burden with just one witness, would you still refuse to convict based on the fact that the State only presents one witness?

[Horner]:  I still think it goes back to that one witness. Do you trust that one witness.

[The State]:  Well, and that's what the question is saying, is that you trust them. So, if you believed them, would you convict or refuse to convict?

[Horner]:  It would be hard.

          . . . .

[The State]:  . . . . I need you to come back to this question, okay? So, I put my one witness on, and that one witness proves my case to you. Okay? So, the case is proven.

THE COURT:  And, Mr. Moss, if I could interject. This is a hypothetical. He's not talking about this case. It's just a hypothetical situation. Okay? You may proceed.

[The State]:  Thank you, Judge. And so, I put my one witness on and my one witness convinces you beyond a reasonable doubt, it proves my case. So, if I prove my case beyond a reasonable doubt, I'm entitled to a conviction. Right?

[Horner]:  Right.

[The State]:  Right? So, would you convict or would you refuse to convict based on the fact that I only put on one witness?

[Horner]:  I guess it would be how I felt.

[The State]:  Okay.

18

[Horner]: If I could remove that there was any kind of doubt in my mind --

[The State]: Well, and that's --

[Horner]: Whether it's one witness or 10.

[The State]: Sure, sure. But the question I'm saying is that -- that -- we've reached that point. Okay? The question is giving you the answer. The question says, you've made up your mind and you think the defendant committed the offense. Okay. So, if you thought the defendant committed the offense, would you convict him or would you refuse to?

[Horner]: If I totally think that he committed it, I can vote that he -- go by the law of his guilt.

[The State]: You would find him guilty. Now, if I achieve that in your mind with just one witness, would that -- would one witness change the calculation or would it be the same?

[Horner]: I think it could change. It's got to be the total package.

[The State]: Okay. So --

[Horner]: You know, there's more involved than just one witness.

[The State]: Sure. Well, not -- not in this scenario. Not in this alternative.

[Horner]: I don't like the scenario, then.

. . . .

[The State]: So, it sounds to me that you're saying that, even if one witness convinced you beyond a reasonable doubt, you might not be able to convict.

[Horner]: Depends on the rest of the information.

[The State]: Okay. All of the information in the trial is the one witness.

[Horner]: One witness.

[The State]:   That's it.  That's all of the information in the trial in this hypothetical scenario.  There's nothing else.  And that one witness convinces you of the defendant's guilt, so I've proven my case to you.  Right?  Would you refuse to convict or would you convict after I've proven my case to you?

[Horner]:   If we got to that point, I would have to make that decision.

[The State]:   Well, sir, are you refusing to answer this question?

[Horner]:   Yeah.

[The State]:   Why would you refuse to answer this question?

[Horner]:   No, I just -- I just -- I'm just having a hard time with one person totally changing somebody's life.

[The State]:  Sure.  And that's -- that's why we address this issue and that's why we're testing the limits of the law.

[Horner]:   Yeah.

[The State]:   That's why I bring it up.  So, what do you think? . . . .

[Horner]:   I'd have a hard time.

[The State]:   So, you would refuse to convict.

[Horner]:   Yeah.

The State then moved to strike Horner from the jury panel, and Akin attempted to rehabilitate him:

[Akin's Counsel]:   Sir, so, I mean, Mr. Moss told you that that one witness convinced you. . . . Now, if the one witness did not convince you, obviously you wouldn't convict.  Is that right?

[Horner]:   Yeah, I guess.  Apparently I didn't understand what the one witness said, so I don't know.

[Akin's Counsel]:  Well, that's fine.  You would -- you would -- if -- if you learned as a juror in a case that there was only one witness, before you heard that one witness testify, would you say, Hey, there's only one witness, I couldn't convict, or would you wait to listen to what that witness has to say?

20

[Horner]: Well, I can't say that because I've never been in that situation.

[Akin's Counsel]: I'm sorry?

[Horner]: I couldn't ever say that because I haven't been in that situation.

[Akin's Counsel]: Okay. I understand you haven't been in that situation. What we're trying to do is see if you can follow that law that you would -- you would listen and consider what that witness says.

[Horner]: I would listen, yes. I'm not going to just on one witness turn off my hearing aid.

[Akin's Counsel]: But -- so, you would still -- you wouldn't automatically acquit because . . . there's only one witness?

[Horner]: I wouldn't be a very good juror if I didn't listen to every word said. It's not fair to either side.

[Akin's Counsel]: So, you would still be able to listen and consider and make your judgment based on what that witness told you. Correct?

[Horner: Yeah.

[Akin's Counsel]: Okay. All right. Your Honor, I'd object. He said he could listen and consider what the one witness told him.

THE COURT: I'm going to sustain the challenge.

Although the State did not specifically state the basis of its challenge to Horner's qualifications to sit as a juror, the context of the challenge shows, and the parties agree, that the challenge is based on Articles 35.16(b)(3) and 38.07(b)(1) of the Texas Code of Criminal Procedure. The former provides that the State may challenge a juror for cause if "he has a bias or prejudice against any phase of the law on which the State is entitled to rely for conviction or punishment." TEX. CODE CRIM. PROC. ANN. art. 35.16(b)(3) (West 2006). Under the latter, the

21

uncorroborated testimony of a victim under seventeen years of age at the time of an offense is sufficient to support a conviction for, *inter alia*, sexual assault or indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(b)(1) (West Supp. 2014); *State v. Dudley*, 223 S.W.3d 717, 726 (Tex. App.—Tyler 2007, no pet.); *Ruiz v. State*, 891 S.W.2d 302, 304 (Tex. App.—San Antonio 1994, pet. ref'd). Since the State was entitled to rely on the so-called one-witness rule set forth in Article 38.07(b)(1) if that witness established all of the elements of the offense beyond a reasonable doubt, its extensive questioning of Horner was focused on determining whether he would be unable to render the appropriate verdict. This made the basis of the State's challenge for cause apparent to the trial court and the parties, even though it was not explicitly stated. Likewise, Akin's voir dire examination of Horner sought to establish that Horner would be able to correctly apply the one witness rule and render an appropriate verdict. Even though his objection might have been more clearly stated, we believe the grounds for his objection, in the context of the entire voir dire examination, were abundantly clear to the trial court and the parties. Akin has preserved this point of error.

    *(b)    Error Was Not Waived*

Nevertheless, the State also contends that, even if Akin initially preserved his point of error, he waived it when the jury panel was seated without objection. The State points out that, after jury selection was completed, the trial court read the names of the jurors and asked Akin whether he had any objections to the jury as seated, to which he answered, "No, your Honor." The State argues that, under *Thomas*, the record must plainly demonstrate that the defendant did not intend to waive objections he had previously asserted when he subsequently stated he had no objections.

*Thomas*, 408 S.W.3d at 885. Based on language in *Thomas*, the State argues that, "if from the record as a whole the appellate court simply cannot tell whether an abandonment was intended or understood, then, consistent with prior case law, it should regard the 'no objection' statement to be a waiver of the earlier-preserved error." *Id.* *Thomas* involved the admission of evidence that had been the subject of a motion to suppress and was later proffered by the State during the punishment phase following Thomas' plea of guilty. *Id.* at 878–79. When proffered, Thomas' attorney stated he had "'no objection' to the admission of the evidence." *Id.* at 879. Even in that context, the Texas Court of Criminal Appeals stressed that the abandonment rule should not be applied inflexibly, especially "when the record otherwise establishes that no waiver was either intended or understood." *Id.* at 885.

In a recent case, that Court applied *Thomas* in the context of previously preserved voir dire error. *Stairhime v. State*, 463 S.W.3d 902 (Tex. Crim. App. 2015). The intermediate appellate court had held that the appellant waived any error related to the trial court's sustaining the State's objections to some of his voir dire questions when, "at the end of voir dire, the trial court asked, 'Does either side have an objection to the panel or as to the jury as selected?' [and] [b]oth Appellant and the State responded, 'No, Your Honor.'" *Id.* at 902–03 (quoting *Stairhime v. State*, 439 S.W.3d 499, 507 (Tex. App.—Houston [1st Dist.] 2014), *rev'd*, 463 S.W.3d 902. In reversing the Court of Appeals' judgment, the Court of Criminal Appeals emphasized that the rule set forth in *Thomas* requires the appellate court,

> when assessing the meaning of an attorney's statement that he or she has "no objection" in regard to a matter that may have been previously considered and ruled on, [to] ask whether "the record as a whole plainly demonstrates that the defendant did not intend, nor did the trial court construe, his 'no objection' statement to

constitute an abandonment of a claim of error that he had earlier preserved for appeal."

*Stairhime*, 463 S.W.3d at 906 (quoting *Thomas*, 408 S.W.3d at 885). In applying *Thomas*, the Court noted:

> Asking whether there is an objection to "the seating of the jury," or "to the panel," or "to the jury as selected," makes reference to no specific event that may have occurred previously during the course of the voir dire. The context and timing of questions such as those suggest that they refer to nothing more than the process of confirming that the parties' peremptory strike lists have been properly executed to arrive at the otherwise intended petit jury.

*Id.* at 907. In the Court's opinion, it was not "remotely possible that the trial court's question . . . was directed at whether either party desired to waive previously preserved error that may have occurred during voir dire." *Id.* at 906–07. The trial court's question of whether there were objections to the jury panel was not sufficiently specific to put a party on notice that the trial court was not only asking to hear objections on the seating of the jury, but on every issue that may have occurred during voir dire. *Id.* at 908. It also appears that, in the case of preserved voir dire error, there must be evidence in the record of an express, affirmative waiver of the previously preserved error. *Id.*[13] Thus, the Court held that replying

> "None" or "No, Your Honor," to the question of whether there is an objection to "the seating of the jury," or "to the panel," or "to the jury as selected" at the

---

[13]In *Stairhime*, the Court stated:

> Examining the record as a whole, we conclude that it demonstrates that Appellant neither intended, nor did the trial court likely believe he intended, to waive any error he had previously preserved with respect to the questions he wanted to propound to prospective jurors. This is not to say, of course, that an appellant may not affirmatively waive his ability to raise previously preserved voir dire error on appeal by a clear and unequivocal statement on the record that he wishes to do so.

*Stairhime*, 463 S.W.3d at 908.

conclusion of jury selection does not constitute a waiver of any previously preserved claim of error during the voir dire proceedings.

*Id.*

Similarly, in examining the record in this case, Akin's negative response to the trial court's inquiry whether he had any objections to the jury as seated does not constitute a waiver of his previously preserved error as to the excused juror. The trial court's granting of the State's challenge of Horner for cause came relatively early in the State's voir dire. It was only after the State completed its voir dire, Akin completed his voir dire, and the parties exercised their peremptory strikes that the trial court asked whether there were any objections to the jury as selected. In this context, we do not think the trial court intended to inquire, or that the parties understood it to inquire, whether Akin or the State desired to waive any previously preserved error occurring during voir dire. Akin did not waive this point of error.[14]

(c) *The Ruling Was Within the Trial Court's Discretion*

When determining whether the trial court erred in its ruling on a challenge for cause, we examine "the entire record of voir dire to determine if the evidence is sufficient to support the court's ruling." *Gonzales v. State*, 353 S.W.3d 826, 831 (Tex. Crim. App. 2011) (citing *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002)). The trial court's ruling is afforded "great deference" since it was able to observe both the demeanor and tone of voice of the venireperson.

---

[14]We recognize that some of our sister Courts of Appeals have found a waiver under circumstances similar to those in this case. *See, e.g.*, *Ham v. State*, 355 S.W.3d 819, 823–24 (Tex. App.—Amarillo 2011, pet. ref'd); *Dixon v. State*, No.14-05-00131-CR, 2006 WL 2548175, at *5–6 (Tex. App.—Houston [14th Dist.] Sept. 5, 2006, no pet.) (mem. op., not designated for publication); *Canales v. State,* No. 05-94-01741-CR, 1996 WL 547955, at *4 (Tex. App.—Dallas Sept. 17, 1996, no pet.) (not designated for publication); *Franklin v. State*, No. 01-87-00097-CR, 1988 WL 139732, at *2 (Tex. App.—Houston [1st Dist.] Dec. 22, 1988, no pet.) (not designated for publication). However, none of these cases had the benefit of the 2015 Court of Criminal Appeals decision in *Stairhime.*

25

*Id.* (citing *Feldman*, 71 S.W.3d at 744). Deference is particularly "due when the venireperson's answers are 'vacillating, unclear, or contradictory.'" *Id.* (quoting *Davis v. State*, 313 S.W.3d 317, 344 (Tex. Crim. App. 2010); *Moore v. State*, 999 S.W.2d 385, 400 (Tex. Crim. App. 1999)). Only when the record shows a clear abuse of discretion will we reverse the ruling. *Id.* (citing *Davis*, 313 S.W.3d at 344).

The State may challenge a juror for cause if "he has a bias or prejudice against any phase of the law on which the State is entitled to rely for conviction or punishment." TEX. CODE CRIM. PROC. ANN. art. 35.16(b)(3); *Gonzales*, 353 S.W.3d at 831. When a venireperson exhibits such bias or prejudice, "[t]he test is whether the venireperson's 'bias or prejudice would substantially impair [his] ability to carry out his oath and instructions in accordance with the law.'" *Gonzales*, 353 S.W.3d at 831 (citing *Feldman*, 71 S.W.3d at 744). When the State makes such a challenge for cause, it is the State's burden to establish that the venireperson "is in fact incapable of, or at least substantially impaired from, following the law." *Castillo v. State*, 913 S.W.2d 529, 533 (Tex. Crim. App. 1995) (citing *Hernandez v. State*, 757 S.W.2d 744, 753 (Tex. Crim. App. 1988) (plurality op.)). To have the venireperson struck for cause, the State "must show that the venireperson understood the requirements of the law and could not overcome his prejudice well enough to follow the law." *Gonzales*, 353 S.W.3d at 832 (citing *Feldman*, 71 S.W.3d at 747). In addition, when the challenge for cause is based on a claim that the venireperson is unable to abide by the one-witness rule, as in this case, it is not enough to show that the venireperson needed more than one witness to render a guilty verdict. *See Lee v. State*, 206 S.W.3d 620, 623 (Tex. Crim. App. 2006); *Castillo*, 913 S.W.2d at 533. Rather, the State must show that the venireperson "could

not convict based on one witness whom they believed beyond a reasonable doubt, and whose testimony proved every element of the indictment beyond a reasonable doubt." *Lee*, 206 S.W.3d at 623; *Castillo*, 913 S.W.2d at 533.

Akin admits that the record shows that Horner understood the law concerning the State's burden of proof. He argues that the voir dire of Horner shows that the State failed to carry its burden of showing that Horner would not follow the law, since he affirmed that he would listen to all the evidence and return a guilty verdict if the State met its burden of proof. However, this one general statement does not require the conclusion that Horner would follow the law and conform to the one witness rule specifically. We think that the record, as set forth above, shows that Horner's responses to the State's questions are, at best, vacillating, unclear, and contradictory. That is evident by the State's extended questioning, in which it attempted mightily to elicit a clear and unequivocal answer from Horner. In such a case, the trial court's ruling is entitled to particular deference. Further, the State repeatedly asked Horner if he would refuse to convict the hypothetical defendant if there was only one prosecution witness, yet that witness convinced him beyond a reasonable doubt of the defendant's guilt. A similar question was approved by the Texas Court of Criminal Appeals as sufficient under *Castillo* to establish the State's valid challenge for cause based on the one-witness rule. *See Lee*, 206 S.W.3d at 623–24. Finally, after repeated attempts by the State to get his definitive answer, Horner flatly stated that he would refuse to convict, even if the one witness convinced him of the defendant's guilt. The record supports the finding that Horner was at least substantially impaired from following the law. Therefore, we find

27

no abuse of discretion in the trial court's granting the State's challenge for cause. We overrule this point of error.

We affirm the judgment of the trial court.


Josh R. Morriss III
Chief Justice

Date Submitted:    August 10, 2015
Date Decided:      September 16, 2015

Do Not Publish



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00179-CR

_____

WILLIAM JAMES AKIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-13-24795

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

William James Akin was convicted by a Fannin County jury in this case of indecency with a child by sexual contact[1] and assessed punishment of twenty years' confinement in the Texas Department of Criminal Justice Correctional Institutions Division. This case was tried with three companion cases, which are the subject of other appeals pending before this Court.[2] Akin filed a single, consolidated brief covering all four appeals, in which he contends that the trial court erred (1) in admitting two photographs of adult pornographic websites and two photographs of internet search history pages and (2) in granting the State's challenge of a juror for cause.

The arguments raised in this appeal are based exclusively on the arguments brought before this Court in the companion appeal styled *Akin v. State*, cause number 06-14-00178-CR. In our opinion of this date disposing of that appeal, we found that (1) although the trial court erred, there was no reversible error in the admission of the complained-of evidence and (2) the trial court did not abuse its discretion in granting the State's challenge for cause. For the reasons set forth in that opinion, we likewise overrule Akin's points of error as they apply to this appeal.

---

[1]*See* TEX. PENAL CODE ANN. § 21.11(a)(1), (c)(1) (West 2011).

[2]In his companion cases, cause numbers 06-14-00178, 06-14-00180, and 06-14-00181, Akin appeals from his convictions of one count of sexual assault of a child and two counts of indecency with a child by sexual contact.

We affirm the judgment of the trial court.

Bailey C. Moseley
Justice

Date Submitted:     August 10, 2015
Date Decided:       September 16, 2015

Do Not Publish

3



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00180-CR

WILLIAM JAMES AKIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-13-24796

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

William James Akin was convicted by a Fannin County jury in this case of indecency with a child by sexual contact[1] and assessed punishment of twenty years' imprisonment. This case was tried with three companion cases, which are the subject of other appeals pending before this Court.[2] Akin filed a single, consolidated brief covering all four appeals, in which he contends that the trial court erred (1) in admitting two photographs of adult pornographic websites and two photographs of internet search history pages, and (2) in granting the State's challenge of a juror for cause.

The arguments raised in this appeal are based exclusively on the arguments brought before this Court in the companion appeal styled *Akin v. State*, cause number 06-14-00178-CR. In our opinion of this date disposing of that appeal, we found that (1) although the trial court erred, there was no reversible error in the admission of the complained-of evidence and (2) the trial court did not abuse its discretion in granting the State's challenge for cause. For the reasons set forth in that opinion, we likewise overrule Akin's points of error as they apply to this appeal.

---

[1]See TEX. PENAL CODE ANN. § 21.11(a)(1), (c)(1) (West 2011).

[2]In his companion cause numbers, 06-14-00178, 06-14-00179, and 06-14-00181, Akin appeals from his convictions of one count of sexual assault of a child and two counts of indecency with a child by sexual contact.

We affirm the judgment of the trial court.


Ralph K. Burgess
Justice

Date Submitted:      August 10, 2015
Date Decided:        September 16, 2015

Do Not Publish

3



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00181-CR

_____


WILLIAM JAMES AKIN, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-13-24979



Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

William James Akin was convicted by a Fannin County jury in this case of indecency with a child by sexual contact[1] and assessed punishment of twenty years' imprisonment. This case was tried with three companion cases, which are the subject of other appeals pending before this Court.[2] Akin filed a single, consolidated brief covering all four appeals, in which he contends that the trial court erred (1) in admitting two photographs of adult pornographic websites and two photographs of internet search history pages and (2) in granting the State's challenge of a juror for cause.

The arguments raised in this appeal are based exclusively on the arguments brought before this Court in the companion appeal styled *Akin v. State*, cause number 06-14-00178-CR. In our opinion of this date disposing of that appeal, we found that (1) although the trial court erred, there was no reversible error in the admission of the complained-of evidence and (2) the trial court did not abuse its discretion in granting the State's challenge for cause. For the reasons set forth in that opinion, we likewise overrule Akin's points of error as they apply to this appeal.

---

[1]*See* TEX. PENAL CODE ANN. § 21.11(a)(1), (c)(2) (West 2011).

[2]In his companion cause numbers, 06-14-00178, 06-14-00179, and 06-14-00180, Akin appeals from his convictions of one count of sexual assault of a child and two counts of indecency with a child by sexual contact.

We affirm the judgment of the trial court.


Josh R. Morriss III
Chief Justice

Date Submitted:     August 10, 2015
Date Decided:      September 16, 2015

Do Not Publish