

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-08-00089-CR
_____

ROGER DALE WARR, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th Judicial District Court
Rusk County, Texas
Trial Court No. CR05-182

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

Roger Dale Warr appeals his conviction for indecency with a child by sexual contact. *See* TEX. PENAL CODE ANN. § 21.11 (Vernon 2003). The jury assessed punishment at seven years' confinement. In the trial of the charges against Warr, the State introduced the supporting affidavit for a search warrant for Warr's residence and also introduced a group of sex toys recovered from Warr's master bedroom. On appeal, he complains of the admission of these two items, contending that their admission was harmful error. In our view, the record demonstrates that admission of these two items constitutes harmful error.

*(1)     Admission of Search Warrant Affidavit Was Error*

Warr objected to the admission of the search warrant affidavit, urging that it was hearsay. On appeal, the State concedes error in the admission of the search warrant affidavit but maintains that the error was harmless. Indeed, it is error for the trial court to admit the affidavit and the search

warrant over an objection that they contain hearsay.[1]  *Albitez v. State*, 461 S.W.2d 609, 612 (Tex. Crim. App. 1970); *Baxter*, 66 S.W.3d at 498.

*(2)    Admission of Sex Toys Was Error*

Warr unsuccessfully objected to the admission of the group of sex toys on the basis of relevance and on the basis that the evidence was offered to inflame the jury and had no probative value.  He claims their admission was error.  We agree.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."  TEX. R. EVID. 401.  Relevant evidence is generally admissible.  TEX. R. EVID. 402. Even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.  TEX. R. EVID. 403.  Absent an abuse of discretion, we will not disturb a trial court's decision whether to admit or exclude evidence.  *See*

---

[1]There are exceptions in which search warrants or affidavits may be admissible over a hearsay objection.  *Baxter v. State*, 66 S.W.3d 494, 498 n.2 (Tex. App.—Austin 2001, pet. ref'd). For instance, when a defendant disputes the existence of a warrant and a warrant exists, the warrant may be admitted before the jury.  *See id.* (citing *Sallings v. State*, 789 S.W.2d 408, 416–17 (Tex. App.—Dallas 1990, pet. ref'd)).  Also, if a defendant makes probable cause an issue before a jury, hearsay evidence is admissible.  *See id.* (citing *Juarez v. State*, 758 S.W.2d 772, 774 n.1 (Tex. Crim. App. 1988); *Murphy v. State*, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982); *Adams v. State*, 552 S.W.2d 812, 814 n.1 (Tex. Crim. App. 1977); *Roberts v. State*, 545 S.W.2d 157, 159 (Tex. Crim. App. 1977); *Lacy v. State*, 424 S.W.2d 929, 931 (Tex. Crim. App. 1967)).  In the instant case, Warr does not claim the officers did not have a warrant and did not make probable cause an issue before the jury, leaving no room for the exceptions to the general rule that the search warrant affidavit is inadmissible over a hearsay objection.

*Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). Under the abuse of discretion standard of review, we will uphold a trial court's evidentiary ruling so long as that ruling is within the zone of reasonable disagreement. *See id.*

The State contends the possession of sex toys goes to Warr's intent to arouse or gratify his sexual desire, an essential element of the offense of indecency with a child by contact.[2] *See* TEX. PENAL CODE ANN. § 21.11. The State also points out that the intent to gratify the sexual desire of an appellant may be inferred by the act itself, by appellant's conduct or remarks, or by surrounding circumstances. *In re M.M.L.*, 241 S.W.3d 546, 558 (Tex. App.—Amarillo 2006, pet. denied). The presence of the sex toys, according to the State, would be "surrounding circumstances" from which

---

[2]To support its position that the sex toys and other materials were admissible, the State cites to Rule 404(b). Rule 404(b) of the Texas Rules of Evidence provides that

> [e]vidence of other crimes, wrongs or acts is not admissible to prove character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX. R. EVID. 404(b). Even assuming that the legal possession of sexually-oriented materials would fall within the purview of Rule 404(b), we note that admissibility of such evidence is still subject to a Rule 403 analysis. Even if the evidence is relevant, and the purpose for which it is being offered is permissible under Rule 404(b), it may still be excluded by the trial court under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Warr's objection concerning inflammatory nature and lack of probative value raised the Rule 403 issue.

4

the jury could infer the requisite intent. The State's position that the sex toys were relevant is best summed up by its statement in its brief to this Court:

> The jury could find that Appellant had sexual performance problems, and used these items to enhance his ability to have sex. A logical inference for the jury to take would be that, when the sex toys were inadequate to the task, his next step was to go into the other bedroom and fondle and molest the little girls in an attempt to "to [sic] arouse or gratify" his sexual desire.

The State does concede the possession of the sex toys was not illegal.

Under cross-examination, the officer testified that none of the sex toys were specifically directed at or involved children. He also conceded that the items were discovered in the master bedroom. The State unsuccessfully tried to get in evidence that some of the items were near a video game console, presumably attempting to suggest that the children would have had access to some of the items.

H.H.'s mother, Warr's girlfriend, testified that most of the items were in a locked case and that the items were all in the master bedroom and not accessible to the children. She expressed her refusal to be embarrassed about the items, testified that the items belonged to her and Warr, and explained that some of the items belonged to her prior to her relationship with Warr. Warr, similarly, testified that the sex toys and other items were in his and his girlfriend's bedroom, put away in boxes and drawers.

Our review reveals not only what was said in reference to the possession of the sex toys, but also what is missing in connection with the sex toys. In none of the interviews of the children in the

5

house were any references made to any of the sex toys. None of the witnesses who testified to H.H.'s account of the abuse testified to any connection between the abuse and the sex toys. H.H.'s own testimony, likewise, failed to make any reference to the sex toys. The record shows that the victim's account of abuse did vary over time in terms of frequency, nature, and other details, but never made any reference to any item such as those making up State's Exhibit 4. The officers who testified to the results of the search warrant also failed to connect the sex toys to any of the allegations of abuse.

The State makes another argument concerning the relevance of the sex toys: "It is a logical inference [from the possession of the various sex toys] to conclude that Appellant used the little girls to arouse himself to have relations with his [girlfriend]." We find no support in the record for such a connection. To the contrary, the record suggests that Warr used those sex toys to arouse himself during sexual relations with his girlfriend. The State clearly wants the Court to connect Warr's sex toys and the sexual offense charged here, a connection we have no logical or factual basis to make.

The State fails in its attempt to connect the sex toys with the charged offense. The record shows that the sex toys belonged to Warr and his girlfriend. Further, in no account of the alleged abuse did the child victim make any reference to the sex toys. The record contains no suggestion that sex toys were used in any way related to H.H. To suggest that possession of the toys would lend itself to establishing that Warr made sexual contact with the child victim with the intent to arouse or gratify his sexual desire is to engage in speculation or, worse, to seek to convict on the basis of propensities. Evidence of extraneous sexual activity that simply proves certain propensities toward

6

sexual conduct in general is not admissible; to be admissible, the extraneous activity must ordinarily involve the complainant. *See Boutwell v. State*, 719 S.W.2d 164, 176–81 (Tex. Crim. App. 1985) (op. on reh'g). The trial court's admission of the sex toys over a Rule 403 objection was error.

*(3)      The Erroneous Admission of the Affidavit and Sex Toys Was Harmful*

Other than constitutional error, any error must be disregarded unless it affects substantial rights of the defendant. TEX. R. APP. P. 44.2. The violation of a rule of evidence in the admission of evidence, as in this case, is considered nonconstitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Error affects a defendant's substantial right when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). A criminal conviction should not be overturned for nonconstitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but slight effect. *Id.* In assessing the likelihood that the jury's decision was affected by the error, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the error and how it might be considered in connection with other evidence in the case. The reviewing court might also consider the jury instruction given by the trial court, the parties' theories of the case, closing arguments, and even voir dire, if material to appellant's claim. *Id.*; *Llamas v. State*, 12 S.W.3d 469, 471 (Tex. Crim. App. 2000); *Baxter*, 66 S.W.3d at 499. The improper

7

admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence. *Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986). Here, we identify two errors. Errors may be found harmful in their cumulative effect. *See Feldman v. State*, 71 S.W.3d 738, 757 (Tex. Crim. App. 2002); *Wright v. State*, 28 S.W.3d 526, 537 (Tex. Crim. App. 2000); *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999).

The search warrant affidavit contains references to child pornography, specifically that there was reason to believe there were, in Warr's home, video recordings of sexual offenses exploiting minors, such as the offense charged in this case. The State points out that Warr was able to use the inconsistencies between the search warrant affidavit statements and what was actually discovered at the home. Since the affidavit was beneficial to the defense, the State maintains, Warr cannot show harm. Indeed, Warr attempted to minimize the effect of these references by pointing out that the search of Warr's home yielded no evidence of child pornography. Two notable factors militate against the State's harmlessness argument here. First, the return on the search warrant was not published to the jury. So, initially, the jury saw only what officers *expected* to find at Warr's home, and any defense benefit was at least delayed. Second, the State made a concerted, trial-long effort to make a connection between the sex toys that *were* found and the affidavit's, later shown erroneous, references to child pornography. In fact, immediately following the admission of the search warrant affidavit, the sex toys were first mentioned.[3]

---

[3]Warr also objected to the admissibility of the materials at this point.

In isolation, the erroneous admission of the search warrant affidavit may not seem obviously harmful; but we must consider that error within the context of the entire record. That record shows the State's attempts to emphasize the affidavit's statements, by citing during trial the sex toys that were found, reinforced the harm. In fact, the record demonstrates the State's consistent, trial-long effort to connect the sex toys to the allegations of indecency with a child by sexual contact.

The State first made reference to the sex toys and other sexually oriented materials found at Warr's residence at a bench conference, first arguing that they demonstrated Warr's "propensities" and were connected to the search-warrant affidavit's statements concerning child pornography. While this initial argument was not before the jury, it does illustrate the State's theory of admissibility and its treatment of the evidence throughout trial. We also note that the State did refer to the items as a whole as "pornography-related items," at least arguably continuing to try to connect the items to the previously admitted statements from the search warrant affidavit concerning child pornography.

The State made it a point to mention prominently that the officer testifying about the sex toys was wearing protective gloves due to "hygiene" concerns. The State then went on to elicit the officer's description of each sex toy and other items, explaining their common names and uses. The officer apologized directly to the jury at least twice for the graphic nature of the item as he described an item.

The State continued its strategy during its closing argument to the jury. In an effort to blunt the effects of the admission of the affidavit, Warr had pointed out to the jury that no child pornography had been found by authorities. The State responded in its closing argument by saying, "Did they find anything illegal? No. But I don't know how you felt, but I felt they found stuff that was awfully offensive." The State explained that it had brought that evidence to court to "give you a feel of the environment in which this child is living, and the preoccupation, I would say, with sexual issues." The State then urged the jury to use that evidence to decide whether it makes H.H.'s statements more "credible, believable, and true." Emphasizing the State's position that the presence of sexually oriented materials suggests the truth of the allegations of indecency with a child by sexual contact, the State reiterated the position: "But the predilection toward sex, things sexual, it's not a stretch to see then the extension of that onto the area that we've seen with [H.H.]."

We have found nothing in the record that would connect the sex toys to the State's allegations of indecency with a child by sexual contact. Instead, we have found that the State emphasized those items in providing a detailed description of each item, making certain to emphasize their graphic nature by carrying them in a single plastic tub, pointing out the testifying officer's wearing of gloves, and repeatedly apologizing to the jury for the graphic nature of those items. Indeed, the State sought and obtained admission of various sexually oriented materials as a single exhibit, in the plastic tub. The exhibit included the sex toys complained of here by Warr, as well as sexually explicit magazines and DVDs not urged on appeal by Warr. The record shows the State's compound emphasis on the

10

two improperly admitted items of evidence in an attempt, on the heels of hearsay allegations of child pornography, to suggest that Warr's *legal* possession of sexually oriented items supported the allegations of indecency with a child by sexual contact. That emphasis is in vivid contrast with a record demonstrating that no child pornography was found and failing to make any factual connection between the sexually oriented materials and the alleged offense. That vivid contrast coexists in this case along with the variable, unsteady, and questioned testimony of the child complainant. Given all that, we believe such an approach and the effort with which it was made had a substantial and injurious influence on the jury's verdict. Nothing gives us fair assurance that those coexisting problems did not influence the jury or had only a slight effect.

Having found harm in the erroneous admission of the search warrant affidavit and the sex toys, we reverse the trial court's judgment and remand the matter to the trial court for a new trial.


Josh R. Morriss, III
Chief Justice


Date Submitted:    December 10, 2008
Date Decided:    April 15, 2009

Publish