

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00208-CR

BENEARL LEWIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Bowie County, Texas
Trial Court No. 18F0325-005

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

MEMORANDUM OPINION

Benearl Lewis was convicted by a Bowie County jury of the felony murder[1] of his four-year-old son, D.L.,[2] and was assessed a sentence of life imprisonment and a $10,000.00 fine. On appeal, Lewis contends (1) that the evidence was legally insufficient to support the jury's finding that he committed an act which caused the death of D.L. and (2) that the trial court erred in admitting evidence of prior allegations of abuse by Lewis against D.L. Because we find that sufficient evidence supported the jury's finding and that the trial court did not err in admitting the evidence of the prior allegations of abuse, we affirm the trial court's judgment.

## I. Sufficient Evidence Supported the Jury's Finding that Lewis Caused the Death of D.L.

### A. Standard of Review

In our legal sufficiency determination, all the evidence is reviewed in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). That said, we defer to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

---

[1]*See* TEX. PENAL CODE ANN. § 19.02(b)(3).

[2]We will refer to all persons who were minors at the time of the commission of the offense by their initials. *See* TEX. R. APP. P. 9.10.

facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In drawing reasonable inferences, the jury "may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life." *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring)). The jury is also the sole judge of the credibility of the witnesses and the weight to be given their testimony and may "believe all of a witnesses' testimony, portions of it, or none of it." *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). We give "almost complete deference to a jury's decision when that decision is based on an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

In our review, we consider "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). Each fact need not "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). We also consider all the evidence admitted at trial, whether or not it was properly admitted. *See Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

## B. Analysis

Under the statute and the State's indictment, the State had to prove beyond a reasonable doubt that on or about March 6, 2018, Lewis (1) intentionally, knowingly, recklessly, or with criminal negligence (2) committed the felony offense of injury to a child and, (3) while in the course of and in furtherance of committing that offense, (4) committed an act clearly dangerous to human life by hitting [D.L.] with or against an unknown object, (5) which caused the death of D.L. *See* TEX. PENAL CODE ANN. § 19.02(b)(3). In his first issue, Lewis only challenges the legal sufficiency of the evidence that showed he hit D.L. with or against an unknown object, which caused the death of D.L.

Viewed in the light most favorable to the trial court's judgment, the evidence at trial showed that at about 2:00 p.m. on March 6, 2018, D.L.'s mother, Khadija, received a text message from Lewis that stated, "Baby, I need you to come home." Khadija, who had just gone on break at work, got in her truck and hurriedly sped out of the parking lot without informing anyone at work that she was leaving. Shortly after 4:00 p.m. that day, Lewis and Khadija pulled up to the patrol vehicle of Officer Brent Hobbs of the Texarkana, Texas, Police Department, who was

4

investigating a traffic accident on West Seventh Street in Texarkana. Lewis told Hobbs that he had a child who was not breathing and needed a police escort to the hospital. Hobbs called for the fire department and LifeNet, an emergency medical service, to return[3] to the scene of the traffic accident, then checked D.L. for a pulse. D.L. had no pulse and was cold to the touch, so Hobbs looked for a place to begin CPR. Marty Lawrence, a firefighter with the Texarkana Fire Department, performed CPR at the scene and in the LifeNet ambulance on the way to the hospital.

Hobbs, Lawrence, other police officers, and other firefighters who were at the scene testified that although Khadija was upset and crying, Lewis showed no emotion at all. While D.L. was at Wadley Regional Medical Center (Wadley), and later at Arkansas Children's Hospital (ACH), Lewis' demeanor was described as emotionless, as if nothing had happened, even when he was informed that D.L. would not survive his injuries.

At the scene, Lewis and Khadija told Hobbs and another firefighter that D.L. had fallen off a chest freezer[4] and hit his head and that he had a seizure. Lewis maintained his claim that D.L. fell off the chest freezer when questioned by medical personnel at the hospitals and by police investigators, although the details of how D.L. fell and what part of his body contacted the floor first varied.

All the physicians that examined D.L., both ante- and post-mortem, testified that the injuries suffered by D.L., including his fatal head injury, were inconsistent with a fall from a chest freezer. Candace Shoppe is the forensic pathologist who examined D.L. post-mortem. Karen Farst

---

[3]Vehicles from the fire department and LifeNet had just left the scene of the accident and were about a block away.

[4]The chest freezer was thirty-four inches high.

is certified in both pediatrics and child abuse pediatrics and examined D.L. at ACH. They both testified that the cause of D.L.'s death was blunt force trauma to the head, which caused severe bleeding in the right side of the brain. Farst also testified that the blunt force trauma to D.L.'s head was consistent with him being slammed into a sheetrock wall.[5] She noted that D.L. did not suffer a depressed or crushed skull that one would expect if he had been hit with something solid like a bat or slammed into concrete. In looking at the photograph of the indentation in the wall of Lewis' house, she explained that the force needed to cause the indentation was consistent with D.L.'s head injury and that the sheetrock would have some give and transfer the majority of the force into the brain. Shoppe opined that D.L.'s head injuries were more consistent with being thrown into a sheetrock wall, because of its give, than into a concrete or cinderblock wall. Farst also testified that D.L.'s head injury was caused by a clear trauma so that a caregiver would immediately be concerned and that the progressive symptoms that D.L. would have exhibited would also have caused concern.

D.L. also suffered significant bruising to his chest; bruise patterns on his legs consistent with a belt; significant bruising on his back that corresponded to bleeding and swelling around his internal organs; significant bruising on his thighs, front, back, buttocks, and genitalia; and deep tissue bruising on his back. All these injuries were two to three days old.[6] Shoppe opined that these injuries appeared to be intentionally inflicted and that they were consistent with child abuse.

---

[5]Investigators found a large indentation or caved-in area toward the bottom of a sheetrock wall in the living room of Lewis' house on Redwater Road in Wake Village. Khadija told the investigator that the indentation had not been there when she went to work on the morning of March 6, but was present when she returned to the house at 2:00 p.m. The State theorized that Lewis slammed D.L.'s head into the wall, causing the injuries that led to his death.

[6]D.L. was taken to Wadley on March 6 and died at ACH on March 8.

Considering the totality and severity of these injuries, Farst diagnosed D.L. as being a victim of child abuse.

J.L., D.L.'s seven-year-old brother, testified that on the day D.L. went to the hospital, he and D.L. were in trouble, and Lewis made them do push-ups. Lewis also hit D.L. with a belt that day and pushed D.L. into the wall.

Judie Townsend, a special investigator for the Texas Department of Family and Protective Services, testified that Child Protective Services (CPS) had several cases open on Lewis and Khadija and that the couple had moved several times from Bowie County, Texas, to Miller County, Arkansas, and vice versa, during active CPS cases. She agreed that persons involved in a CPS case in Bowie County or Miller County will sometimes relocate from one county/state to the other to avoid going through the CPS process. Townsend testified that CPS had investigated Lewis several times when his family members had been injured and that he had a pattern of fabricating false stories to explain what happened. She also testified that at the time of D.L.'s injury, Lewis and Khadija were subject to a CPS safety plan that provided that Lewis was not to live in the home or to be around the children.

Lewis argues that the circumstantial evidence put on by the State is outweighed by the testimony elicited from J.L. on cross-examination. In that testimony, J.L. agreed that at one time, he had told "someone" that D.L. had fallen off the freezer. He also testified that when D.L. jumped off the freezer, he fell onto the floor, hit his head, and then was not breathing. J.L. said that both his mother and his father were home at the time and that they got his brother and sister and went

7

to the hospital. Lewis argues that with this testimony, no rational jury could have found that he caused D.L.'s death beyond a reasonable doubt. We disagree.

To establish the guilt of the defendant, circumstantial evidence is equal in probative value to direct evidence. *Ramsey*, 473 S.W.3d at 809. And as the fact-finder, the jury may "believe all of a witnesses' testimony, portions of it, or none of it." *Thomas*, 444 S.W.3d at 10. Here, there were good reasons for the jury to believe J.L.'s testimony on direct, rather than his cross-examination testimony. The testimony showed that Khadija hurriedly returned home around 2:00 that afternoon after receiving an urgent communication from Lewis. When she arrived, there was a large indentation in the sheetrock that had not been there that morning. By the time Lewis and Khadija decided to take D.L. to the hospital shortly after 4:00, he was already cold to the touch. The medical providers also all testified that D.L.'s fatal injuries were inconsistent with a fall from a chest freezer and that the injuries were more consistent with being slammed into a sheetrock wall. They further testified that D.L. had suffered other severe injuries to his body consistent with child abuse.

Based on this evidence, a rational jury could reasonably infer that while intentionally or knowingly committing injury to a child, Lewis slammed D.L.'s head into the sheetrock wall, causing his death. As a result, we find that there was legally sufficient evidence to support the jury's finding that Lewis committed an act clearly dangerous to human life by hitting D.L. against an unknown object, which caused the death of D.L. We therefore overrule Lewis' first issue.

8

**II.     No Trial Court Error in Admitting the Prior Allegations**

In his second and third issues, Lewis asserts that the trial court erred when it admitted testimony about prior allegations of abuse made by D.L. against Lewis. At trial, the State called Michelle Neal, a former investigator for the Arkansas Department of Human Services. Neal testified that on December 30, 2016, she was investigating a case against Lewis and interviewed D.L., who was then three years old. D.L. told Neal that he was afraid of Lewis because Lewis "whips him on his weewee" and "whips him . . . on his butt with a belt."

The State also called Makki Currie, a pre-kindergarten teacher at Wake Village Elementary. Currie testified that on February 20, 2018, D.L. came to school with a visible bump on the right side of his head above his eyebrow that was scraped and bruised. Initially, D.L. told her that he had bumped it on a table in the cafeteria. But when Currie pressed D.L., he told her, "That's what my father told me to tell you happened." When she asked what really happened, D.L. said that Lewis was "whooping him . . . with a belt, and it pushed his head into the wall."

Andrew McCarter, the assistant vice-principal at Wake Village Elementary, testified that on February 20, 2018, D.L. had an injury over his right eye and that D.L. told him that Lewis had given him a whipping and he ended up going into a wall.

Lewis argues that all these allegations were inadmissible because they were not relevant and the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. We disagree.

### A.    Lewis' Complaint Was Preserved

The State contends that Lewis failed to preserve his complaint about the admissibility of these allegations. To preserve error regarding the admission of evidence for appellate review, a party must first timely object, stating the specific grounds for the objection if not apparent from the context, and obtain a ruling on his objections from the trial court. TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a)(1). Generally, the party must also object to the admission of the evidence each time it is offered. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). This latter requirement has two exceptions: (1) the trial court may grant a continuing or running objection, or (2) the party may object outside the presence of the jury and the trial court rules that the evidence is admissible. *See id.* at 858–59; TEX. R. EVID. 103(b). Here, the trial court heard Lewis' objections[7] to the admissibility of the testimony about these allegations outside the presence of the jury, and the trial court ruled that the testimony was admissible. We therefore find that Lewis' complaint has been preserved.

### B.    Standard of Review

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. TEX. R. EVID. 401. While relevant evidence is generally admissible, evidence that is not relevant is inadmissible. TEX. R. EVID. 402. Further, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the

---

[7]At trial, Lewis objected to the testimony under Rules 401, 403, and 404(b) and under the Confrontation and Due Process Clauses. He also argued that D.L.'s statements were hearsay. On appeal, Lewis only asserts that the allegations were not relevant under Rule 401 and that the probative value of the testimony was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 401, 403.

issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *Saucedo v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004); *Warr v. State*, 418 S.W.3d 617, 619 (Tex. App.—Texarkana 2009, no pet.). If the trial court's ruling is within the zone of reasonable disagreement, we will uphold its ruling. *Martin*, 173 S.W.3d at 467; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g); *Warr*, 418 S.W.3d at 619.

## C.    Analysis

### 1.    The Testimony Regarding D.L.'s Allegations Was Relevant

Lewis argues in his second issue that the testimony about D.L.'s allegations against him was not admissible because it was not relevant to any contested issue at trial. Evidence is relevant if it tends to make a fact consequential to determining the action more or less probable than it would be without the evidence. TEX. R. EVID. 401. In other words, the evidence must be relevant to a material issue in the case. *See Garcia v. State*, 201 S.W.3d 695, 703 (Tex. Crim. App. 2006); *Smith v. State*, 5 S.W.3d 673, 679 (Tex. Crim. App. 1999). "What issues are material will depend on the theories of the prosecution and the defense." *Garcia*, 201 S.W.3d at 703 (quoting *Smith v. State*, 5 S.W.3d 673, 679 n.13 (Tex. Crim. App. 1999)).

Here, the State offered the testimony under Article 38.36(a) of the Texas Code of Criminal Procedure, which provides:

> (a)    In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding

11

the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.36(a).

The Texas Court of Criminal Appeals has noted that under Article 38.36, "in some situations, prior acts of violence between the victim and the accused may be offered to illustrate the nature of the relationship." *Garcia*, 201 S.W.3d at 702. Here, the State's theory was that Lewis caused the death of D.L. while committing, or in furtherance of committing, injury to a child. Although Lewis did not testify, the testimony of several witnesses was that Lewis consistently maintained that D.L.'s death was accidental. Also, Lewis' cross-examination of J.L., who testified that D.L. became unconscious after falling off the freezer, was emphasized in Lewis' final argument. Thus, whether D.L. died during an incident of child abuse or from an accidental fall was a material issue. As a result, D.L.'s prior allegations of child abuse, which showed the relationship of Lewis and D.L. shortly before D.L.'s death, were relevant evidence. *See id.* at 703–04.

### 2. The Testimony Was Admissible Under Rule 403

In his third issue, Lewis argues that the allegation testimony was inadmissible under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. Even if evidence is relevant, it may still be inadmissible if required by statute, rule, or the United States or Texas Constitutions. TEX. R. EVID. 402. Even though evidence may be relevant under Article 38.36(a), its admissibility is limited by Rules 403 and 404. *Garcia*, 201 S.W.3d at 703; *see* TEX. R. EVID. 403, 404.

12

A trial court's Rule 403 determination is reviewed for abuse of discretion. *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013). "[A] trial court does not abuse its discretion when it admits or excludes evidence pursuant to Rule 403 so long as its decision is within the zone of reasonable disagreement." *James v. State*, 555 S.W.3d 254, 260 (Tex. App.—Texarkana 2018, pet. dism'd, untimely filed) (citing *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009)).

> In our analysis of the trial court's ruling under Rule 403,
>
> we should consider (1) how compellingly evidence of the extraneous offense serves to make a fact of consequence more or less probable, (2) the potential that the extraneous offense will impress the jury in some irrational but indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the extraneous offense evidence.

*Id.* (quoting *Hartsfield v. State*, 305 S.W.3d 859, 873 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002))). "Rule 403 favors admissibility, and 'the presumption is that relevant evidence will be more probative than prejudicial.'" *Id.* (quoting *Montgomery*, 810 S.W.2d at 389). We will find that the trial court abused its discretion in admitting the evidence only if the danger of unfair prejudice substantially outweighed the probative value of the evidence. *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).

Lewis concedes that both the time needed to develop this evidence and the State's need for the evidence both favor admissibility. As a result, we will only address the remaining two factors.

Under Rule 404(b), evidence of prior bad acts is not admissible to show the defendant's character and that he acted in conformity with that character on a particular occasion. TEX. R.

EVID. 404(b)(1). Even so, it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2).

Lewis argues that the allegation testimony was not offered to show any of the purposes listed in Rule 404(b)(2) and that, therefore, it had no probative value, i.e., it did not tend to make a fact of consequence more or less probable. Yet, the purposes listed in Rule 404(b)(2) "are neither mutually exclusive nor collectively exhaustive." *De La Paz*, 279 S.W.3d at 343 (citing *Pondexter v. State*, 942 S.W.2d 577, 583–84 (Tex. Crim. App. 1996); *Montgomery*, 810 S.W.2d at 387). Evidence reflecting the nature of the relationship between the victim and the defendant in a murder trial is admissible under Rule 404(b)(2). *Garcia*, 201 S.W.3d at 704. This factor also favors admissibility.

As to the third factor, Lewis argues that the allegation testimony caused the jury to convict him for being a criminal in general, irrespective of the other evidence. We disagree. Here, the trial court gave a limiting instruction in its jury charge that instructed the jury that it could only consider the evidence of other bad acts if it believed Lewis had committed the other bad acts beyond a reasonable doubt, and, if it so believed, it could only consider the evidence for the limited purposes as explained in Article 38.36(a) and Rule 404(b)(2).[8] Without evidence to the contrary,

---

[8]The jury charge limited the jury's consideration of this evidence

> for the limited purposes of (1) showing the relevant facts and circumstances surrounding the killing, the previous relationship existing between the accused and the deceased, the condition of the state of mind of the accused at the time of the offense, or (2) condition of the state of mind of the defendant showing the defendant's motive, opportunity, intent, preparation, plan, or knowledge, or consciousness of guilt, and for no other purpose.

14

we presume that the jury followed the trial court's instructions. *James*, 555 S.W.3d at 261 (citing *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005)). Considering the medical and other evidence supporting the State's theory of how D.L. died, there is no reason for us to believe that the jury had reasonable doubt about Lewis' guilt, but convicted him anyway based on D.L.'s allegations of prior abuse. *See Garcia*, 201 S.W.3d at 704. For that reason, we find that this factor also favored admissibility.

Since the testimony about D.L.'s allegation of prior child abuse was relevant and its probative value was not substantially outweighed by the danger of unfair prejudice, we find that the trial court did not abuse its discretion in admitting the testimony. We overrule Lewis' second and third issues.

## III. Conclusion

For the reasons stated, we affirm the trial court's judgment.


Scott E. Stevens
Justice


Date Submitted:     July 9, 2019
Date Decided:       July 23, 2019

Do Not Publish

15