# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-22-00288-CR
NO. 03-22-00289-CR

---

**Juan Hernandez, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 460TH DISTRICT COURT OF TRAVIS COUNTY
NOS. D-1-DC-12-300718 & D-1-DC-12-300719,
THE HONORABLE SELENA ALVARENGA, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury found Juan Hernandez guilty of two offenses. Tex. Penal Code §§ 21.11(a)(1) (indecency with child by sexual contact), 22.021(a)(2)(B) (super aggravated sexual assault of a child). The court assessed sentence of twenty years in prison for the indecency offense and thirty years in prison for the sexual-assault offense. The prison terms were set to run concurrently.

On appeal, Hernandez asserts that his sentence is disproportionate to his crime, that the evidence is legally insufficient to support the sentence, that the court should have granted his motion for mistrial when prejudicial evidence was admitted, and that the judgment is invalid because it does not correctly state the statute under which he was originally indicted. We will modify the judgment as described below to fully cite the statutory subsections the jury found Hernandez violated. We affirm the judgments of conviction as modified.

# BACKGROUND

The offenses in this case occurred in February 2012 though the trial did not occur until May 2022. Hernandez was convicted of sexually assaulting H, his granddaughter, and S, a family friend, both then five years old, in H's family's apartment in Austin. At trial, S was fifteen years old and H was fourteen.

H lived in the apartment with her father and mother, three other children, and Hernandez, who lived in an upstairs room. On February 22, 2012, some guests visited, including S and her brother, S's Mom (H's mom's friend), S's Mom's boyfriend (Boyfriend), and a couple of other adults. The adults drank alcohol, while the children—who were younger than six—spent part of the time downstairs and part of the time upstairs in H's room coloring and playing with toys. H's Mom testified that, at around 10 or 11 p.m., Hernandez went upstairs.

S's Mom testified that S came downstairs, and she sent S back upstairs with an iPad. Less than five minutes later, S came back downstairs. At trial, S testified that she and Hernandez crossed paths on the stairs. She testified that Hernandez slid his hand down past the waistband of her pants and underwear, touched her vagina, and called her "princess." She testified that she felt uncomfortable and tried to get away from Hernandez, but he blocked her. She testified that nobody else saw the incident. When he finally let her past, she continued downstairs, went to her mother, and started crying. Her mother asked if somebody had hit her or hurt her; when her mother asked if somebody touched her, S said "yes." She remembered that started an argument "between everybody," after which her mother and Boyfriend took her to the hospital where she was examined. S identified Hernandez in open court. S testified that H was upstairs when Hernandez touched S on the stairs. S testified that she never saw Hernandez touch H improperly.

2

S testified that she would get into trouble if she showed her privates to another child and, though she had said in a forensic interview that she and H had showed each other their private parts, at trial she did not remember doing that.

S's Mom testified that, when S came downstairs, she appeared nervous, red, and very agitated, which was not normal for her even if she had "gotten into it" with the other kids. H's Mom also testified that S was in shock or scared when S came downstairs; H's Mom demonstrated that S covered her face and herself with her hands in a way H's Mom had not seen her do. H's Mom testified that she asked S what was wrong, but that S did not want to talk to her. S's Mom testified that she did not hear S screaming. When S said she wanted to leave, S's Mom took her into a restroom and asked her if somebody had touched her; S's Mom testified that S said Hernandez had touched her "in her vagina." S's Mom testified that S's vagina was very red and irritated and had a clear liquid that looked like saliva, though S's Mom testified that she was sure it was not.

S's Mom told Boyfriend that they needed to leave because of the touching, and Boyfriend got angry, went upstairs, and argued with Hernandez. H's Mom also testified that the parents had verbal altercations. She said that H's Dad jumped in to defend Hernandez, his father. S's Mom testified that she saw Hernandez leave, and she never saw him again. H's Mom testified that Hernandez said that S was lying, then left seemingly without emotion regarding what was happening; she did not see him again until the trial. The parents' argument eased only when S's Mom and her boyfriend left with her kids. Minutes after leaving the apartment, S's Mom and Boyfriend returned to the apartment to collect S's Mom's phone. S's Mom testified that H's Mom accused S of lying about the incident. H's Mom testified that H did not know what had happened to S, but did not accuse S of lying.

3

S's Mom testified that she and Boyfriend took S to the emergency room for an examination where they also talked to police officers. S's Mom testified that, beginning shortly after the incident and for quite a few years afterwards, S would almost every night wake up with nightmares and wet her bed.

H testified that her childhood was kind of a blur. She remembered the gathering where the offenses occurred. She testified that the adults were on the first floor while the children were on the second floor playing, though not in Hernandez's room. She saw Hernandez go into his room, so she and S went into his room to get candy from a mixed bag. She said that Hernandez touched her while she was on his bed. Her shirt was on, but Hernandez pulled her pants and underwear down. H testified that Hernandez touched her vagina with his hand and with his tongue. She did not remember if he went in her vagina. She did not recall anyone being in the room when he touched her. She remembered "waking up and just him touching me" and licking her. She said it felt icky and gross. The touching did not last long, then he would give her candy.[1] H testified she did not remember seeing anything happening to S. She said she remembered S and her crossing paths with Hernandez on the stairs, and him touching them on their vaginal areas over their clothes. H said she remembered going to the hospital after the incident, but her mind is blank about anything that happened there. H said she watched a forensic-interview video made when she was five years old but did not remember making the video. H identified Hernandez in the courtroom. On cross-examination, H testified that she did not remember as a child showing her private parts to S but remembered kissing her. H testified that she began talking about the incident involving Hernandez more when she was in fifth grade.

---

[1] H testified that she did not think it "always" happened at night, though there was no testimony about additional occurrences.

4

H's Mom testified that the first person H told about the incident was her cousin that same night. When the cousin told H's Mom the accusation, H's Mom took H to the hospital for an examination. H's Mom testified that, from that day, her daughter changed from energetic and outgoing to quiet and closed off. H's Mom denied accusing S of showing her genitals to H.

H's Dad testified that he first knew something was wrong when he heard S screaming as her mom was bringing her downstairs and Boyfriend was yelling about Hernandez touching S inappropriately. He had never seen S that red-faced before. He testified that S's Mom noticed that S's pants were not "right." He said he was defending his father because he did not want the accusations to be true. After S and her family left, he went to soothe H and her siblings and discovered that his father had left. H's Dad testified that it appeared Hernandez had quickly sorted through his (Hernandez's) belongings and taken only some of them, leaving the rest in disarray. H's Dad testified that he saw Hernandez for the first time after that at the trial. H's Dad said they took H to the hospital and got into another confrontation with S's family there. He testified that H was scared of everybody and stopped smiling.

Sexual Abuse Nurse Examiner (SANE) Shannon Villareal examined both girls at the hospital early the morning after the incident. She testified that H told her that Hernandez touched her vagina with his fingers. Villareal testified that S said that her mother's friend's grandfather touched her on top of and underneath her clothing.

Austin Police Detective Jon Abbott questioned the girls' parents at the hospital on the night of the incident. He testified that the parents were visibly shaken and highly intoxicated. He testified that, on the night of the incident, H's Mom told him that all of the children—including H and S—were lying and that Hernandez did not touch them.

Austin Police Detective Mai Wines testified that she observed the forensic examinations of the children at the Center for Child Protection. S was interviewed five days after the incident, and H was interviewed seven days after the offense. Wines testified that S articulated commission of indecency by contact by saying what body parts Hernandez touched. Wines testified that H articulated the offense of aggravated sexual assault of a child by articulating body parts touched and by whom. Wines described the children's interviews as very detailed and appropriate to the questions asked. Forensic interviewer Jennifer Murphy testified that the girls articulated child abuse quickly and gave a lot of detail, considering their ages. After interviewing the parents, Wines identified Hernandez as the suspect. H's Mom brought a bin of items that she said belonged to Hernandez from their apartment.

Brianne Floryan, a forensic DNA analyst testified regarding the results of DNA found on H. She said that a DNA sample from H's fingernail was 1.1 times more likely to be from Hernandez as from another unrelated individual, and so fairly uninformative. She testified that there was not enough male DNA in H's vagina to support further testing.

Another forensic DNA analyst, Alexandra Polakovic, testified that a DNA test from H's underwear was 199 trillion times more likely to have originated from Hernandez than from an unrelated individual. She conceded that she did not know when the DNA was deposited and that Hernandez's son and grandson lived in the same apartment and shared DNA with Hernandez. She excluded Hernandez as a contributor to a DNA sample from S.

## DISCUSSION

Hernandez raises four points of error, some of which require us to examine the relevance and sufficiency of the evidence to support the conviction. Hernandez contends that the

6

trial court should have granted a mistrial based on some inflammatory testimony, imposed a grossly disproportionate sentence that was not supported by sufficient evidence, and did not match the statute on which he was indicted to the statute on which he was convicted. The Texas Penal Code provides that a person commits aggravated sexual assault if the person knowingly or intentionally causes penetration of the sexual organ of a child younger than 14 years old. Tex. Penal Code §§ 22.021(a)(1)(A)(i), (a)(2)(B). A person commits indecency with a child by contact if he engages in sexual contact—any touching of any part of the genitals of another person with the intent to arouse or gratify the sexual desire of any person—with a child younger than 17 years old and not his spouse. *Id.* § 21.01(2), .11(a)(1).

**The trial court did not abuse its discretion by denying a motion for mistrial.**

By his third point of error, Hernandez contends that the trial court abused its discretion by failing to grant his motion for mistrial because of part of a police officer's testimony at the guilt-innocence phase of trial. The district attorney asked the officer about being unable to locate Hernandez after the incident. The attorney asked if the mother of one of the victims with whom Hernandez lived brought something to police. Asked what she brought, the officer responded, "She brought us a plastic bin with various items that they alleged belonged to Juan Hernandez, including pillows, videos, sex toys, bank statements." Hernandez's attorney objected to the mention of sex toys as a violation of a motion in limine. He argued that the testimony was prejudicial, asked that the testimony be struck from the record, and requested a

7

mistral. The trial court sustained the objection and instructed the jury to disregard the officer's answer but did not grant the requested mistrial.[2]

We conclude that the trial court implicitly denied the motion for mistrial by continuing with the trial after sustaining the objection and instructing the jury to disregard testimony. *See* Tex. R. App. P. 33.1(a)(2)(A); *In re Commitment of Hill,* 308 S.W.3d 465, 479-80 (Tex. App.—Beaumont 2010) (finding implicit denial of mistrial motion when court held trial after jury panelist expressed opinion in voir dire that appellant could not receive a fair trial), *rev'd on other grounds*, 334 S.W.3d 226 (Tex. 2011) (court abused discretion by rejecting voir dire questions).

We review the denial of a motion for mistrial for an abuse of discretion. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We view the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). The ruling must be upheld if it was within the zone of reasonable disagreement. *Id*. A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon*, 284 S.W.3d at 884. A mistrial should be granted only when residual prejudice remains after less drastic alternatives are explored. *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005). An instruction by the trial court to disregard improper testimony will usually cure error because we presume that the jury follows the trial court's instructions. *Gamboa v. State*,

---

[2] Hernandez also mentions that he objected to testimony from the SANE who testified that she thought that the assault had happened. The court sustained his objection and instructed the jury to disregard that testimony as well. Hernandez did not request a mistrial regarding this evidence and does not assign this as error other than asserting that this evidence would not have been heard had the trial court granted the mistrial when requested. This argument does not present grounds for reversal.

8

296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Phillips v. State*, 130 S.W.3d 343, 347-48 (Tex. App.—Houston [14th Dist] 2004), *aff'd*, 193 S.W.3d 904 (Tex. Crim. App. 2006) (affirmed on other grounds). In *Gardner v. State*, the Court of Criminal Appeals described a statement about a defendant's previous incarceration as "undoubtedly inadmissible and prejudicial testimony, having no relevance to any issue at the guilt stage of trial," but held that "that bare fact, unembellished, was not so inflammatory as to undermine the efficacy of the trial court's instruction to disregard it". 730 S.W.2d 675, 697 (Tex. Crim. App. 1987). Mistrial is appropriate when the objectionable events are so emotionally inflammatory that curative instructions are unlikely to prevent the jury from being unfairly prejudiced against the defendant. *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2004).

In assessing the trial court's exercise of discretion in denying the motion for mistrial, we balance: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the witness's testimony), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). The struck testimony did not describe the nature or amount of the sex toys, and there was no evidence that Hernandez used any of the items in committing the offenses. The judge instructed the jury to ignore the entire answer and thus did not call undue attention to the sex toys and thereby potentially emphasize any inflammatory effect. This passing and excluded mention of sex toys is nothing like the admission of sex toys held to be harmful error in another case of indecency with a child cited by Hernandez. *See Warr v. State*, 418 S.W.3d 617, 619 (Tex. App.—Texarkana 2009, no pet.). In that case, the actual toys were admitted into evidence. The State argued that, although they were not used in the offenses, the toys were a

9

"surrounding circumstance" from which the jury could infer the requisite intent; the State argued that the jury could find that appellant had sexual performance problems, that he used the items to enhance his abilities, and that, when the toys were inadequate, appellant's next step was to go into the little girls' bedroom and fondle and molest them in order to arouse or gratify his sexual desire. *Id.* at 620. Other witnesses called more attention to the sex toys. A police officer testified that the items were not specifically directed at children. Appellant's girlfriend, the victim's mother, testified that the items were all in the master bedroom, most in a locked case, and were not accessible to the children. Appellant testified similarly that the items were in the master bedroom, put away in boxes and drawers. *Id.* This extensive testimony about the sex toys, the admission of two of them into evidence, and the State's attitude about them in argument that may have infused its examination of the witnesses stands in stark contrast to this case which involves a single sidelong mention of sex toys in a list of items in a bin—testimony that was struck and that the jury was instructed to disregard. Most critically, the record in this case contains ample and strong evidence supporting the jury's verdict. We overrule point of error three.

**Hernandez did not raise reversible error regarding his sentences.**

By two points of error, Hernandez challenges the length of his sentence. By his second point of error, Hernandez contends that the evidence is legally insufficient to support his sentence. He concedes that, where the sentence is within the prescribed range (as the sentences in this appeal are), the general rule is that the sentence will not be disturbed because assessment of punishment is a normative process and not factbound. *See Sunbury v. State*, 88 S.W.3d 229, 233 (Tex. Crim. App. 2002); *Jarvis v. State*, 315 S.W.3d 158, 161 (Tex. App.—Beaumont 2010,

10

no pet.). Because the victim of his sexual assault was younger than six years old, the punishment range for that first-degree felony was 25 to 99 years or life. Tex. Penal Code §§ 12.32 (first-degree felony range), 22.021(e) (aggravated sexual assault is first-degree felony), 22.021(f)(1) (minimum 25 years if victim younger than six). The court assessed 30 years in prison on this conviction. The indecency count was a second-degree felony with a punishment range of two to 20 years. *Id.* §§ 12.32 (second-degree felony range), 21.11(d) (indecency with child by contact is second-degree felony). The court assessed 20 years in prison on this conviction.

Hernandez argues that the trial court abused its discretion in assessing those sentences against a 65-year-old man in a 10-year-old case with victims who did not remember parts of the events from the time of the offenses. *See Gerhardt v. State*, 935 S.W.2d 192, 196 (Tex. App.—Beaumont 1996, no pet.) (sentence reviewed for abuse of discretion when trial court fails to consider mitigating circumstances). A trial court abuses its discretion if it acts unreasonably or arbitrarily or acts without reference to guiding principles. *See Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). If we find an abuse of discretion, we must next decide if that error constituted reversible error. *See* Tex. R. App. P. 44.2; *Proenza v. State*, 541 S.W.3d 786, 801 (Tex. Crim. App. 2017). Hernandez contends that the 20- and 30-year sentences are a life sentence because he is 65 years old. He complains that witnesses' memories deteriorated over the ten years before trial; for example, one child did not recall going to the hospital after the offense or making an interview video. Hernandez argues that the children were easy to influence and that the forensic interviewer could not tell definitively whether the children had been coached and did not ask questions to see if they had been subjected to leading or suggestive questions. Hernandez also asserts that a police officer testified that the mother of one

11

of the victims told him that other children present at the time of the reported incidents said one of the victims was lying and that Hernandez did not touch them.

We conclude that Hernandez has not alleged a basis on which he can challenge the evidentiary sufficiency of the evidence to support his sentences. Further, he has not shown an abuse of discretion. While the trial court sentenced him to the top of the range for the indecency offense, that time will be served concurrently with the 30-year sentence for aggravated sexual assault. On that offense, his sentence is near the bottom of the statutory range. None of the asserted mitigating factors compel a conclusion that the trial court acted without reference to guiding principles in sentencing Hernandez.

By his first point of error, Hernandez complains that his sentence is grossly disproportionate to the crime committed and, therefore, violated his right to freedom from cruel and unusual punishment. *See* U.S. Const. amend VIII. He complains that the sentence is disproportionate to the offenses and, given his age, is a life sentence. He was 65 years old when sentenced, so the longer sentence if fully served would last until he was 95 years old.

The State contends that Hernandez failed to preserve this issue by raising it at trial. An appellant can preserve his complaint that the sentence imposed on him is disproportionate by making a timely and specific objection when the sentence is pronounced or by raising it in a motion for new trial. Tex. R. App. P. 33.1(a)(1); *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996); *Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.). The State asserts that Hernandez did neither, and Hernandez does not cite where in the record he timely raised the issue.

Even if Hernandez had preserved the issue, his age does not make the sentence grossly disproportionate to the offense. In addition to the nature of the offense, Hernandez left

12

quickly after the incident and did not see his family for ten years. Hernandez does not specify which of the sentences he challenges. Both sentences were within their respective punishment ranges. The 30-year sentence is at the lower end of the range for the super aggravated sexual assault conviction. *See* Tex. Penal Code §§ 12.32, 22.021(e), 22.021(f)(1). The 20-year sentence for the indecency count is the top of the punishment range for the indecency count. *See id.* §§ 12.32, 21.11(d). Though the latter sentence is the maximum allowed for that offense, it is to be served concurrently with a longer sentence. We overrule points of error one and two.

**The judgment does not state an incorrect statute, but will be modified to include the statute that increased the minimum sentence.**

By point of error four, Hernandez asserts that the judgment "may not correctly state the statute under which he was originally indicted, and so, it is invalid." He complains that the indictment states that he was charged under Penal Code "§ 22.021(a) & (f)", but the judgment states that he was convicted under "§ 22.021(a)(2)(B)." He asserts that the indictment was intended to be unclear and allow the trial court to pick the offense under the entire statute.

Hernandez did not raise this objection before trial and has waived it. *See Jenkins v. State*, 592 S.W.3d 894, 896, 902-03. (Tex. Crim. App. 2018). Further, the indictment and judgment are not inconsistent. While the judgment is more specific about the means of commission under subsection (a), he was charged and found guilty of violating that subsection. *See* Tex. Penal Code § 22.021(a)(2)(B). The indictment's mention of subsection (f) provides the detail that the offense is "super" aggravated and that the minimum sentence would be 25 years if evidence showed that the child was under six years old when the offense was committed; the court's notation in the sex-offender status section of the judgment shows that the trial court

13

found that the victim was younger than six. The 30-year sentence is not inconsistent with the 25-year minimum. *See id.* § 22.021(f).

The State notes that the judgment does not expressly mention subsection (f) and requests that we reform the judgment to reflect that the court made a finding under subsection (f) to ensure that the appellant's sentence is correctly computed by the Texas Department of Criminal Justice (TDCJ). The Fort Worth court reformed a judgment under strikingly similar circumstances, reasoning:

> The State's requested modification is warranted because it was an element of the offense that the State was required to prove, because it ensures proper calculation of Bledsoe's sentence for aggravated sexual assault of a child under six, and because Bledsoe does not argue it would be improper.

*Bledsoe v. State*, 479 S.W.3d 491, 498 (Tex. App.—Fort Worth 2015, pet. ref'd). The jury was instructed and charged regarding the offense of "(Super) Aggravated Sexual Assault of a Child" concerning a sexual assault of a child younger than six years old. The jury found him guilty of one of the two counts of super-aggravated sexual assault that included the child's age as an element of the offense. As in *Bledsoe*, the judgment of conviction explicitly states in the section on sex-offender registration, "The age of the victim at the time of the offense was UNDER 6 years." *See id.* The State argues here, as the Fort Worth court concluded in *Bledsoe*, that reformation of the judgment would ensure that TDCJ correctly computes Hernandez's sentence, including the bar of early release on parole. *See id.*; *see also* Tex. Gov't Code § 508.145(a) (eligibility for release on parole and computation of parole-eligibility date). The appropriate remedy is to modify the district court's judgment to reflect the correct statute. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). We have the authority

to modify an incorrect judgment when the necessary information is available to do so. *Figueroa v. State*, 250 S.W.3d 490, 517 (Tex. App.—Austin 2008, pet. ref'd). We overrule Hernandez's fourth point of error and grant the State's request to modify the judgment.

## CONCLUSION

We modify the judgment of conviction in appellate cause number 03-22-00288-CR (trial court cause number D-1-DC-12-300718) to add the underlined and bolded characters to show that the "Statute for Offense" is "PC 22.021(a)(2)(B)**, (f)(1)**," where "PC" is the abbreviation for the penal code. With the modification to the judgment as described, we affirm the judgments of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed as Modified

Filed: July 26, 2023

Do Not Publish

15